H2o6janc

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   JANIK, et al.,

 4              Plaintiffs,

 5         v.                              16 CV 7308(JGK)(AJP)

 6   SPIN MEDIA, LLC.,

 7              Defendant.

 8   ------------------------------x
                                           New York, N.Y.
 9                                         February 26, 2017
                                           3:35 p.m.
10
     Before:
11
                      HON. ANDREW J. PECK,
12
                                           Magistrate Judge
13
                            APPEARANCES
14
     LIEBOWITZ LAW FIRM, PLLC
15        Attorney for Plaintiff
     BY:  RICHARD LIEBOWITZ
16
     TANTALO & ADLER, LLP.
17        Attorneys for Defendant
     BY:  MICHAEL ADLER
18

19

20

21

22

23

24

25
```

H2o6janc

1            (Case called; in open court)

2            THE COURT:  Mr. Adler, this is Judge Peck.  Can you

3    hear me?

4            MR. ADLER:  I can but there is a lot of background

5    noise.  As long as you speak loudly, it is fine.  I apologize

6    if I am sounding a little loud.

7            THE COURT:  If you are on a speaker phone, please get

8    off the speaker because you are coming through muffled.

9            MR. ADLER:  I am not, your Honor.  I am on my handset.

10            THE COURT:  Okay.  Present in the courtroom is Mr.

11    Liebowitz, counsel for the plaintiff.

12            First, Mr. Liebowitz, in some letter you or one of

13    your colleagues asked to see the communications between one of

14    my law clerks and Spin and I will now hand you a copy of that

15    e-mail chain --

16            MR. LIEBOWITZ:  Thank you.

17            THE COURT:  -- and basically tell you that I

18    instructed Mr. Phillips my clerk to call Spin or e-mail them

19    when we couldn't find a phone number because it struck me that

20    Spin was the sort of corporation that I would not expect to see

21    in default and I know there have been problems with service

22    through the Secretary of State or the usual agencies that

23    accept service for companies.  And then while they are supposed

24    to promptly forward it to the company, they don't.  So that was

25    the reason behind it if you have anything you want to say on

H2o6janc

1    that.

2            MR. LIEBOWITZ:  Yes, your Honor.  So the service was

3    through their agent corporation trust company.

4            THE COURT:  That's the same thing.

5            Mr. Adler, here is what you need to do:  Call back in

6    and we'll put you on a different phone line because you are

7    breaking up.  I cannot tell whether you are trying to talk or

8    whether it is just something else.

9            MR. ADLER:  I will call back.

10            THE COURT:  Immediately.

11            MR. ADLER:  Yes.

12            (Pause)

13            THE COURT:  Mr. Adler, can you hear me?

14            I don't know if it is on your end or our end, but it

15    is what it is.

16            Mr. Liebowitz, I am going to ask you to just move much

17    closer.  Stand at the edge of the deputy desk so that you can

18    hear Mr. Adler.  This is one of the problems with giving

19    lawyers who are far away telephone access.  It works in theory.

20    It doesn't always work with the equipment.

21            Proceed.

22            MR. LIEBOWITZ:  Your Honor, defendant was served

23    through their corporation trust company, which is a reliable

24    company that corporations they work with them all the time.  I

25    do this all the time.  I serve through their agent all the time

H2o6janc

1    and it always gets to them.  If there is a default judgment,

2    then defendant is not -- you know, I am not sure how they

3    didn't get it in this particular case.

4              THE COURT:  Well, the answer seems to be from

5    Mr. Adler's partner's letter said that a different Spin Media

6    was served.

7              MR. LIEBOWITZ:  So, yes.  To address that question and

8    that concern from our end is that we do not see Spin Media

9    Group that corporation listed as a corporation.  We looked it

10   up in California.  We looked it in up Delaware.  We looked it

11   up in New York.  We didn't see it.  So we're not accurate that

12   is even true.  The only entities that show up on the New York

13   corporation search or California search is Spin Media not Spin

14   Media Group.  So we do not believe that that is accurate that

15   it wasn't served to the right party because we don't see that

16   as even as true incorporation.

17             THE COURT:  Why don't you try to explain the corporate

18   phenomena, Mr. Adler.

19             MR. ADLER:  Well, I am looking at the Secretary of

20   State right now and I think the issue is see if I can find the

21   file number -- I am not finding it right this second.  I looked

22   it up when we got this letter and my client has said to me that

23   Spin Media -- the entity they served is not the Spin Media

24   entity that operated the website.

25             So if the Court requires, I can submit a letter with

H2o6janc

1    the corporate information and the proper entity.

2            THE COURT:  The other possible solution from your

3    client's e-mail, that is Michelle Singer's e-mail to the Court,

4    who she identifies herself as general counsel for Prometheus

5    Global Media, LLC, which "very recently acquired certain assets

6    from the Spin Media Group."  Maybe it makes sense for

7    Prometheus as the successor to some Spin Media to be the right

8    defendant.

9            MR. ADLER:  I understand this would be an identified

10   claim under the sale agreement, but that may or may not be

11   relevant to you.

12           THE COURT:  I think what is relevant to plaintiff's

13   counsel is he wants to sue the right entity and he wants to

14   make sure it is an entity that has money so that if he gets a

15   judgment after litigating as opposed to default, you are not

16   going to have pulled a bait and switch on him here and have

17   gotten the claim to be against an entity that will turn out to

18   be asset-less.

19           MR. ADLER:  Understood.  I certainly had authority on

20   behalf of my client to accept an amended complaint that names

21   what we think is the proper entity.  I don't have any authority

22   on behalf of Prometheus.

23           THE COURT:  Here is what I would suggest unless, Mr.

24   Liebowitz, I don't want to cut you off from making an argument,

25   but I have a suggestion for both of you.

H2o6janc

1          MR. LIEBOWITZ:  I was going to say that the service

2    was done properly.  Spin Media, you know, if what they are

3    saying, you know, is accurate from the website it says Spin

4    Media, LLC, and they should do due diligence in terms of that

5    is their company whatever whether it is owned or a parent

6    company or whatnot that they should be doing their due

7    diligence to accept --

8          THE COURT:  It may be they screwed up, but in any

9    event I assume you've researched the law and some Spin Media,

10   assuming it is the right one, has now appeared and is willing

11   to both accept service of an amended complaint naming what they

12   view is their Spin Media entity and the Court generally and

13   under Second Circuit law a default is not favored and certainly

14   if this were done in the formal sense that I am trying to save

15   you all money on of a motion by whatever Mr. Adler's Spin Media

16   is to open the default, vacate the default and proceed on the

17   merits that would be granted.

18         So what I am trying to do and now let me try to make

19   the suggestion whether service was good or bad:  To the extent

20   that Mr. Adler's firm is willing to come in an accept service

21   on behalf of its Spin Media and whether you amend to name what

22   I will call the Adler Spin Media or -- don't try to claim

23   ownership based on this, Mr. Adler -- whether you want to leave

24   the original Spin Media as a codefendant and we will worry

25   about whether it the right defendant, wrong defendant, whether

H2o6janc

```
 1    it was or wasn't served down the road, again to the extent you

 2    might be worried, Mr. Liebowitz, that they are trying to

 3    replace a defaulted and asset-full version of Spin with a

 4    version of Spin that doesn't have assets, I don't care if you

 5    leave them in as a codefendant, replace them.  If the two of

 6    you want to spend some time talking informally what about the

 7    right name is, where it is incorporated, or whether Prometheus

 8    as successor in interest in part to Spin is the proper

 9    defendant, I don't really care but I much rather promptly get

10    this case moving on the merits.

11            In addition, carrot and stick or whatever, there is a

12    good chance that you would get minimal damages, except possibly

13    statutory, because despite being told to submit inquest

14    evidence, all I have got is a lawyer affidavit saying the

15    client gets X dollars per photograph.  As I am sure you know a

16    lawyer is not a percipient witness.  So if you were somehow to

17    prevail on me or Judge Koeltl to rule on the current inquest,

18    careful what you wish for.

19            So with that carrot, stick, whatever, what is your

20    pleasure, Mr. Liebowitz.

21            MR. LIEBOWITZ:  So, your Honor, the -- so plaintiff

22    spent the time to put together the -- all the default paperwork

23    before any of this happened, you know, taking the time to put

24    together the memorandum of law.

25            THE COURT:  How much did that cost?
```

H2o6janc

1          MR. LIEBOWITZ:  I believe it was put into -- that was

2    put into Exhibit A, which is -- if we add it up --

3          THE COURT:  Roughly about $5,000.

4          MR. LIEBOWITZ:  Yes.

5          THE COURT:  I think I know what you are saying, but

6    what are you suggesting?

7          MR. LIEBOWITZ:  So I suggest that the $5,000 be

8    reimbursed to plaintiff for preparing for the default and

9    putting together all the paperwork.

10          THE COURT:  Mr. Adler.

11          MR. ADLER:  Yes.  I don't think -- this all could have

12    been avoided if Mr. Liebowitz would have been talking to me a

13    lot before the -- asked me if I would accept service or let us

14    know that he was filing the suit and determined the correct

15    entity, which is Spin Media, Inc.  I am looking at the

16    California Secretary of State now filing information.  I think

17    maybe the issue is that counsel didn't look for Spin Media as a

18    single word instead of Spin, space, Media is the right entity,

19    a compound word.

20          THE COURT:  Let me suggest to both of you and

21    particularly to Mr. Liebowitz that all the work you did

22    drafting the complaint is obviously still valid.

23          MR. LIEBOWITZ:  The complaint, yeah.

24          THE COURT:  So the default was your entries on

25    November 1 and December 10 of roughly $1,500 and that is

H2o6janc

assuming the Court were to approve both your and your

associate's billing rates.

Would you all like to compromise since you are also

billing by the hour and the longer this takes, the more it is

costing you both having Spin pay a thousand dollars to vacate

the default?

MR. ADLER:  That seems reasonable to me.  I don't have

authority to do; but if we put this in abeyance and I have a

chance to consult with my client and with counsel assuming my

client is agreeable to that, I don't know if Mr. Liebowitz is

agreeable with that or not.

MR. LIEBOWITZ:  You know, if it was 5,000 --

THE COURT:  Mr. Liebowitz.

MR. LIEBOWITZ:  Yes.

THE COURT:  Let's be serious.  When I originally said

five, I took off certain amounts from the back and off of your

total of 7500.  I have now looked at it and everything accept

the entries on November 1 and December 10 are preparing the

complaint, etc.  So it looks like roughly 1500 again, much of

which frankly is purely ministerial that I probably wouldn't

give you 350 an hour.  I am not sure how senior your colleague

Mr. or Ms.  Tsyvkin is but you are not talking about very much

money.

MR. LIEBOWITZ:  I mean, if a thousand dollars --

THE COURT:  What I am looking for is consent between

H2o6janc

1    you and Mr. Adler.  Obviously I can make a decision if there

2    isn't consent and then you all can have review rights of that

3    by Judge Koeltl or Second Circuit or Supreme Court you want to

4    deal with.

5         Will you accept a thousand if Mr. Adler gets his

6    client's permission on it quickly?

7         MR. LIEBOWITZ:  Okay.

8         THE COURT:  Good.

9         So, Mr. Adler, get your client's permission on it and

10   frankly that is the sort of thing that should not be a client

11   call.  It should be yours.  Let's move forward.

12        How long do you think it will take the two of you to

13   agree on what the right corporate entity should be and get an

14   amended complaint in?  A week?  Two weeks?  What is your

15   pleasure starting with Mr. Adler who has the corporate

16   information?

17        MR. ADLER:  I think we should be able to get the

18   corporate complaint out by this coming Friday.  If Spin Media

19   is involved that may take a little longer.  I can name

20   Prometheus.

21        THE COURT:  I really rather you all figure out who is

22   being sued than him naming Prometheus and then you saying your

23   client had a fit and you are going to move to dismiss.

24        MR. ADLER:  In that case why don't we say two weeks.

25        THE COURT:  Fine.  By approximately March 3 you will

H2o6janc

1    give the appropriate corporate information to Mr. Liebowitz.

2    Hopefully you two can reach common ground.

3            By March 10, Mr. Liebowitz, you will file an amended

4    complaint either dismissing the Spin Media, LLC, that was

5    already served or adding other people as the case may be.

6            I also would hope you would use some of that time to

7    try to settle the case because there is probably a lot less

8    money involved than it is going to take you all if you start

9    litigating it.  Indeed, looking at the inquest the total

10   damages other than attorneys' fees seem to be in the

11   neighborhood of $25,000.  I may be missing a paragraph in here

12   somewhere.

13           MR. LIEBOWITZ:  That is for one of the plaintiffs.

14   The other plaintiff has 10,000.

15           THE COURT:  So 35,000.  My guess unfortunately is

16   litigation is pretty expensive and that you are going to burn

17   through that amount pretty quickly whether attorneys' fees

18   would be awarded to anybody is somewhat discretionary with the

19   Court.  So the sooner you settle it, the better.

20           In any event, how much time assuming you don't settle

21   it do you think you each need for fact and expert discovery?

22           Mr. Liebowitz, I will start with you.

23           MR. LIEBOWITZ:  That discovery four months.

24           THE COURT:  Why?

25           MR. LIEBOWITZ:  Four months is what we want to do is

H2o6janc

1    we want to depose the editor of the -- of two articles.  So

2    we'll have to depose them.  We'll have to get documents

3    including the profits from the particular website.  I am not

4    sure how long that will take on the defendant's side, but I

5    know that if it is -- you know, this company may take a little

6    while.  Also we would like to find out from them where they got

7    the images from.  I am assuming that would be from the editor

8    who wrote the article.

9              THE COURT:  I hear three months.

10             MR. LIEBOWITZ:  Okay.

11             THE COURT:  Does that work for the defense?

12             MR. ADLER:  Assuming we'll get cooperation from the

13   plaintiff, yeah.  There is not a lot of contact if we end up

14   with a dispute that requires Court intervention.

15             THE COURT:  Read the Southern District of New York

16   rules and my rules.  It takes you about a day from having a

17   good faith meet and confer on discovery to get a letter to me

18   and get you into court.

19             MR. ADLER:  Okay.

20             THE COURT:  Do you either of you expect to have any

21   experts?

22             MR. LIEBOWITZ:  Your Honor, plaintiff may have an

23   expert on profits to determine how much money defendants made.

24   Defendant a media company.  Their business is having visitors

25   flock to their website so ultimately there are more viewers,

H2o6janc

1    which goes into X so and so dollars they make each year.

2            THE COURT:  I understand all of that.  I think the

3    ability to accurately allocate that to those photos is going to

4    be a challenge.

5            MR. LIEBOWITZ:  Yes.  That's what the expert report --

6            THE COURT:  I understand.

7            So fact discovery cutoff May 24th.

8            Will the defendant have an expert in response or

9    retaliation or whatever?

10            MR. LIEBOWITZ:  I don't know, but it wouldn't hurt to

11    use it that way.  Sorry, your Honor.  I want to put this in the

12    briefing schedule.  I think I will reserve that catchall.

13            THE COURT:  So let's put it a complete discovery

14    cutoff of June 30.  You will all have to arm wrestle with each

15    other as you get into April as to who is going first, which

16    will probably be plaintiff, and giving enough time for the

17    experts to do their thing and retaliate and respond to each

18    other, etc.

19            Mandatory initial disclosure, how soon can you both do

20    it?

21            MR. LIEBOWITZ:  Within two weeks of today.

22            THE COURT:  That works.

23            MR. ADLER:  I would think at least another week

24    especially since we may not have the operative complaint.  Two

25    weeks from today.

H2o6janc

1          THE COURT:  March 17.  I have no problem with either

2     of you serving discovery requests at any time even before then

3     despite the old rules.  So this constitutes in a way of moving

4     the case forward your 26(f) to trigger the ability to file

5     discovery requests and start the response time.

6          I do suggest that the two of you as you are talking

7     about corporate structure going forward in the next week or two

8     also have a real full-blown 26(f) to talk about what you each

9     need from each other, what you don't need, and in light of the

10    value dollar of the case and its requirement under 26(b)(1) of

11    proportionality, you are going to make this work without

12    spending multiple times the damage claim.

13         It is my practice to give parties two paths to go down

14    at the close of discovery so that you don't have to prepare a

15    pretrial order if there is going to be a summary judgment

16    motion.  So by July 5th you'll notify me and as necessary Judge

17    Koeltl, but I will come back to that, as to whether you intend

18    to move for summary judgment or not.  If there is going to be a

19    summary judgment motion, it will be due July 28th.  If there is

20    no summary judgment motion, the pretrial order is due

21    July 28th.  If there is a summary judgment motion, the pretrial

22    order is adjourned automatically until 30 days after the Court

23    decides the summary judgment motion and once the PTO is filed,

24    whether that is July 28th or a subsequent time, the case will

25    be considered trial ready on 24 hours' notice with whatever

H2o6janc

1    further information that Judge Koeltl could give you if you

2    stay with him.

3          This is also my opportunity to remind you all that you

4    have the option pursuant to 28, U.S. Code, Section 636(c) to

5    stipulate to have the case in front of me for all purposes

6    including any motions and trial if the case gets that far.

7          Are you all in a position to make that decision today?

8    I will take a wild guess, Mr. Adler, that you will have to talk

9    to your client; is that correct?

10          MR. ADLER:  Yes.

11          THE COURT:  Each of you talk to your clients and talk

12   to each other and jointly get back to me why don't we say by

13   March 17th as to whether you are or aren't consenting.

14          The report, I don't care which of you writes it.  ECF

15   in a letter with the signed form attached to it or ECF in a

16   letter saying, Thanks, but no thanks.  Do not say Party A said

17   yeah but Party B said no.  I don't care.  The rules say I am

18   not supposed to know; but even if I were to know that, I don't

19   care.  Either you are with me for supervising discovery and the

20   like, which I am going to keep the case for, or you are with me

21   for all purposes.

22          Let's set another status conference date.  What is

23   your pleasure, end of March?  Early April?  When do you think

24   you would have gotten your document request out and responded

25   to?

H2o6janc

1          MR. LIEBOWITZ:  End of April.

2          THE COURT:  You are cutting it somewhat close.  That

3    only gives you a month more of your discovery period.  Let's

4    see what is available.  How about April 19, does that work?

5          Mr. Adler, you have the advantage of sitting by your

6    calendar so we'll start with you.

7          MR. ADLER:  Yes.  That works.

8          THE COURT:  I would do it in deference both to the

9    fact that I have a case on that morning and knowing that you're

10   three hours away so to speak that we would do it at 2:00.

11         Does that work, Mr. Liebowitz?

12         MR. LIEBOWITZ:  That should.  I will check the

13   calendar.

14         THE COURT:  In the future bring your phone.  Get

15   permission.

16         MR. LIEBOWITZ:  It should work.

17         THE COURT:  Or print out a paper calendar.

18         MR. LIEBOWITZ:  Yes.

19         THE COURT:  Read my rules.  If you have a discovery

20   dispute long prior to April 19th, don't wait.  Write me a

21   letter on ECF and we'll deal with it.  Conversely if you get

22   the two business days before April 19th and you are playing

23   nicely with each other and you are on track for your discovery

24   cutoff date and there were no disputes, then jointly write a

25   letter or call my secretary jointly saying we have no disputes,

H2o6janc

1    we are on track to make the discovery cutoff date, and we would

2    like to adjourn the conference a week, two weeks, a month or

3    whatever you may want.

4         A single-party request to extend the conference date

5    is unlikely to be granted on the ground that that is the person

6    who is probably in default to the other party of something.

7    Obviously if it is a medical issue that has come up, I

8    appreciate you each being courteous to each other.  A, just a

9    single letter that says we don't need the conference signed A

10   is not going to get you anything.  In any event whatever you

11   write in the conference is not adjourned until you either get a

12   memo endorsement back from me or until one of my staff members

13   confirms that it is off.  Merely saying you both want it off

14   doesn't get it off.

15        Mr. Adler, you and your partner need, and I think you

16   were told this previously, to get onto the ECF system and get

17   your appearance.  Do that even before the amended the complaint

18   and your answer to it because I am not sending you anything

19   else anymore by fax or e-mail.  If you don't pick it up off the

20   ECF system, you will be left in the dark and still be expected

21   to comply with everything.

22        Clear?

23        MR. ADLER:  Yes, your Honor.  I was going to ask if a

24   settlement conference with your Honor was a possibility.

25   Frankly in the sense that you accurately identified the

H2o6janc

1      financial situation in the case.

2              THE COURT:  I happy to do it.  It depends on two

3      things:  One, if I am going to be the trial judge that you both

4      nevertheless agree since it is listed as a jury trial that I

5      would do the settlement anyway.  If not, if you want me to be

6      the trial judge and you want another magistrate judge to handle

7      the settlement aspect, I would refer it to one of my

8      colleagues, but I have no problem doing it in a jury trial

9      situation.  I am not going to force either of you in that bind.

10             The other thing you both need to know is that while I

11     am happy for status conferences like this for you to be on the

12     phone, Mr. Adler, it doesn't work for the shuttle of diplomacy

13     of settlement conferences and I require counsel and clients

14     with full authority to be present at the conference.  I don't

15     know where Spin is located or the new Prometheus folks or

16     whatever, but it would have to be in person.

17             Clear?

18             MR. ADLER:  Understood.

19             THE COURT:  The last point I would make on that is I

20     do one settlement conference per case.  Some lawyers use

21     settlement conferences for discovery or to show their client

22     what a great arguer they are, but don't expect to settle in

23     that one.  With you me you get one.  When the two of you talk

24     in the near feature as you are talking about who the right

25     party is, etc., you talk about when you would both like to do

H2o6janc

1    it.  Follow the Goldilocks principle that you don't do it too

2    soon or too late because you are only going to do it once.  So

3    figure that out and then get lots of availability dates that

4    work for the two of you and all your clients and you can call

5    my secretary to see which of those fit in with my schedule.

6    Schedule is getting very tight in certain times so the sooner

7    you figure out when you would lake to do it and make that

8    request, the more likely you are to get an available slot.

9           I think that covers everything.  Where is Spin located

10   or what is left of Spin or whatever you want to call it,

11   Mr. Adler?

12          MR. ADLER:  The offices are in Los Angeles and New

13   York.

14          THE COURT:  The articles or postings do you know

15   whether they came out of L.A. or New York or whether it makes

16   any difference in terms of where records.  By records I mean

17   documents.

18          MR. ADLER:  I don't know that, your Honor.  I think

19   the IT department is in New York.  So probably that is where

20   the records are.

21          THE COURT:  Look into it.  Obviously the more that is

22   happening in New York the easier it is for Mr. Liebowitz and

23   the Court even if that is more trouble for you and/or while you

24   have the absolute right to appear pro hac vice, and by the way

25   I guess after today you and/or Mr. Tantalo or both or whoever

H2o6janc

1    is going to be appearing needs to make the appropriate pro hac

2    vice motion unless you are miraculously a member of the bar of

3    this court even though you are in California.

4             MR. ADLER:  My partner is.  I am not.

5             THE COURT:  Well, I guess the first notice of

6    appearance should come from Mr. Tantalo and you should decide

7    if he is going to do anything and everything that happens in

8    court, or if you want to spend the $200, $400 -- I don't

9    remember what the fee is -- and get in pro hac.  I am not going

10   to allow anyone a free bee after today.

11            MR. ADLER:  Understood.  Your Honor, local counsel

12   would also be available.

13            THE COURT:  We have changed our rules multiple years

14   ago to not be protectionist.  So you and your firm can appear

15   and you don't need local counsel; but if you want to hand it

16   off to local counsel so you don't have to schlep across

17   country, that's fine too.  That is up to you and your client.

18            MR. ADLER:  Understood.

19            THE COURT:  Mr. Liebowitz, you will please let me know

20   by the time you file the amended the complaint --

21            MR. LIEBOWITZ:  Yes.  That's March --

22            THE COURT:  Sorry.  I didn't finish the sentence

23   because I was choking.

24            -- whether you are agreeable to vacating the default

25   as to Spin Media, LLC, and dismissing them or whether they are

H2o6janc

1    going to stay in with a default hanging over their head.  I am

2    going to tell you now I am not doing anything on the inquest in

3    light of the new Spin Media that is coming in.

4            MR. LIEBOWITZ:  Okay.

5            THE COURT:  Any other questions from either side?

6            MR. LIEBOWITZ:  I just -- one thing.  I want to go

7    over the dates.  So the first amended complaint would be by

8    March 10th?

9            THE COURT:  Correct.  March 10th for that.  March 17th

10   for the Rule 26(a) mandatory disclosure and also no later than

11   that for your joint response on the 636(c) issue and then the

12   rest of the dates you have heard and plus you will be getting a

13   short form scheduling order via ECF.

14           It is my practice despite the small amount of

15   potential damages here to have a court reporter at all

16   conferences so everything that is done is on the record and I

17   generally require both sides to purchase the transcript unless

18   anybody can make a good argument as to why they should not have

19   to do so.  If you are both purchasing it, it means you are each

20   paying 50 percent not that the court reporter is doing a

21   boondoggle.

22           Hearing no problems, make your arrangements with the

23   reporter.

24           Mr. Liebowitz, you can either do it here in person or

25   both of you have the option of doing it on the website www.SD.

H2o6janc

1    As in Southern District, SDreporters.com.  If I find out that

2    somebody didn't order the transcript, it won't be good.

3              Anything else?

4              MR. LIEBOWITZ:  No, your Honor.

5              MR. ADLER:  Thank you.  Your Honor.

6              THE COURT:  We're adjourned.

7                              o0o

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25