```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

FRAN JANIK and STEVIN HIRSCH,

              Plaintiffs,

         v.                                16 CV 7308 (JGK)(AJP)

SPIN MEDIA LLC and SMG MEDIA,
INC.,

              Defendants.
------------------------------x
                                           New York, N.Y.
                                           May 15, 2017
                                           9:00 a.m.

Before:

                    HON. ANDREW J. PECK,

                                           Magistrate Judge

                        APPEARANCES

LIEBOWITZ LAW FIRM
     Attorneys for Plaintiffs
BY:  YEKATERINA TSYVKIN

MITCHELL, SILVERBERG & KNUPP
     Attorneys for Defendants
BY:  JOHN WILLIAMS
```

1            (In open court)

2            THE COURT:  First, Ms. Tsyvkin, has the $2,000 been
3    sent to the defense?

4            MS. TSYVKIN:  Yes, your Honor, it was sent last week.

5            THE COURT:  All right.  Presumably you will get it in
6    today's mail, tomorrow's mail, or some such.

7            Now the document responses are a little vague where it
8    just says, for example, documents responsive have already been
9    attached to the complaint, plaintiff produces non-privileged
10   documents et cetera, does at that mean that is everything?

11           MS. TSYVKIN:  Your Honor, yes, that is everything.
12   And if it was my omission to put precisely the statement that
13   that is everything in some of the responses, that is -- I take
14   responsibility for that, but it is implied that that is
15   everything.  We have done everything that we could to comply
16   with your Honor's orders, given that our objections were deemed
17   waived in the very short period of time that we had to comply
18   with the order.

19           THE COURT:  And in a few cases you say you reserve the
20   right to supplement.  What does that mean?

21           MS. TSYVKIN:  To supplement by the end of fact
22   discovery.  If your Honor deems that we're precluded from
23   supplementing, we accept that.

24           THE COURT:  You are precluded from using any material
25   that has not been produced by Friday.  If you find additional

1    responsive documents, you need to produce them to the defense.
2    They can use them or not, you can't use them.
3            And the last issue on the document request seems to be
4    your firm's retainer letter, which is generally not considered
5    to be privileged.
6            MS. TSYVKIN:  Your Honor, we considered that the
7    statements were not considered privileged, and we produced all
8    of the statement the settlements.  However the retainer, it was
9    my understanding that is still considered --
10           THE COURT:  Not under the case law.  What case do you
11   have establishing that?
12           MS. TSYVKIN:  I don't have a specific case in mind
13   right now, your Honor, but it is our belief and understanding
14   that in this particular case the agreement between the
15   plaintiff and the plaintiff's attorney that outlines
16   responsibilities, that outlines what is at stake, goes to the
17   essential heart of what privilege is.
18           THE COURT:  Is there any analysis of the case in it or
19   is it merely we'll charge you X or we'll be on a contingency or
20   the typical things that go into the attorney/client
21   establishment?
22           MS. TSYVKIN:  It doesn't necessarily go to the
23   specifics of this case, but it does outline responsibilities
24   and kind of gives away the relationship between counsel and the
25   plaintiff to the extent that the reason why these are being

1   requested, which we found to be very unusual, that someone
2   would want the retainer agreement, is not to necessarily
3   discover things pertaining to this case, that are relevant in
4   this case, but to continue with this very aggressive litigation
5   tactic that counsel has employed, and to deter us and also to
6   chill legitimate cases that we have.
7            THE COURT:  Do you happen to have the retainer
8   agreement with you?
9            MS. TSYVKIN:  I do not.
10           THE COURT:  Produce it.
11           MS. TSYVKIN:  Okay.
12           THE COURT:  Had you had it with you, I would have
13  looked at it.  You knew this was an area in dispute.  So you
14  will produce it by close of business today.
15           MS. TSYVKIN:  Okay.  Thank you.
16           THE COURT:  As to the interrogatories, I think that
17  can be taken up at deposition unless there is anything further,
18  Mr. Williams, that you want me to deal with on that.
19           MR. WILLIAMS:  Yes, your Honor.  I apologize, it's
20  hard without going one by one through all of them to highlight
21  the deficiencies, but there's a few things.
22           On the documents, as you recall from last week,
23  Mr. Liebowitz represented they have a whole bunch of documents,
24  it's too burdensome to go through them.
25           THE COURT:  That's typically what happens when lawyers

1    shoot themselves in the foot.
2             MR. WILLIAMS:  Understood, your Honor, but for them to
3    now say they have no licensing agreements --
4             THE COURT:  Isn't that good for you?
5             MR. WILLIAMS:  Well, yes and no.  So they filed in
6    this case in September 2016.  I think we're entitled to know
7    how much the licenses were for the photo that was used, when it
8    was used.  They still haven't told us that because I'm sure it
9    was next to nothing.  But even assuming that everything before
10   September 2016 they deleted in the normal course of business,
11   which is contrary to what they represented last week, from that
12   date forward clearly they should have been preserving those
13   documents.  They haven't been doing that.
14            THE COURT:  The question is:  Has there been anything
15   licensed since then?
16            MR. WILLIAMS:  Well, if you believe the complaint,
17   both of these individual photographers are in the business of
18   licensing online --
19            THE COURT:  Let's find out from plaintiff's counsel,
20   first of all, when your client says they don't have possession,
21   do they have a licensing agent?
22            MS. TSYVKIN:  Yes.  And the licensing agent for
23   plaintiff Hirsch is Splash, and we produced some of the
24   documents that plaintiff has possession of --
25            THE COURT:  Stop.  You know what possession means in

1    the rules, which means possession, custody or control.  Why

2    hasn't your client -- assuming he doesn't like paper, why

3    hasn't he contacted the licensing agent to say give me all my

4    licenses or all the licensing information?

5              MS. TSYVKIN:  Plaintiff Hirsch did contact Splash to

6    request, and just what we produced is all that we have at this

7    point.

8              THE COURT:  When did Mr. Hirsch contact Splash?

9              MS. TSYVKIN:  The first contact was initially when we

10   were gathering documents for this particular proceeding.  So

11   way back when the original -- the first batch was due.  The

12   second time he contacted after our objections were deemed

13   waived.  So again, there's a short period of time.  I would

14   like to stress that these are not commercial entities, the

15   plaintiffs aren't.  Splash is, and we provided enough

16   information for the defendant to subpoena splash's records.

17             THE COURT:  But they shouldn't have to do that.  Your

18   client has an ongoing relationship with Splash?

19             MS. TSYVKIN:  Yes, your Honor.

20             THE COURT:  Well, why should I not deem that either

21   there are no licenses or some other adverse inference

22   against -- I'll start with Hirsch?

23             MS. TSYVKIN:  Basically I want to say that we have

24   produced everything that we could.

25             THE COURT:  You're not answering my question.

1    MS. TSYVKIN:  You can definitely preclude us from
2  introducing it.  That seems reasonable.
3            THE COURT:  But what is going to happen presumably is
4  Mr. Hirsch is going to testify:  I don't like paper, don't keep
5  paper, but I know I charged a million dollars to license a
6  particular photograph.  So what I may well do is say that his
7  oral testimony on any license that has not been produced is
8  precluded unless the defendant, before his deposition, obtains
9  the documents from splash.
10           Any objection to that?
11           MS. TSYVKIN:  No, your Honor, that's very clear.
12           THE COURT:  Mr. Williams?  If not, tell me what relief
13  you want.
14           MR. WILLIAMS:  Thank you, your Honor.  The
15  interrogatories in some ways are even more egregious --
16           THE COURT:  Let's finish what we're talking about.
17           MR. WILLIAMS:  Yes, your Honor.  So under Rule 37, as
18  you know, if they don't preserve ESI, if they don't preserve
19  documents relevant to case, if they don't comply with the Court
20  order --
21           THE COURT:  Stop.  I have just made a suggestive
22  ruling which plaintiff's counsel said they can live with.
23           MR. WILLIAMS:  Understood.
24           THE COURT:  Is that the relief you want?
25           MR. WILLIAMS:  I would prefer to go farther.  You can

1   go as far as issuing a default judgment, you can go as far as
2   to dismiss this case.
3         THE COURT:  Not on this record.
4         MR. WILLIAMS:  We haven't gone through yet, I think,
5   all of the responses that I think are deficient, but I think
6   there are a few other specific things you could do.  So under
7   the fair use factors, factor four is that there is a negative
8   impact on the market for the plaintiff's work.  You could
9   issue -- I request that you issue an order that they can't
10  basically establish any market harm because we're unable to
11  review their licensing agreements.  I would request that they
12  can't establish actual damages.
13        THE COURT:  But if I preclude them, as I have
14  indicated I would, from testifying about any licenses, the
15  paper of which has not been introduced, you could then argue
16  that that establishes fair use factor number four or whatever
17  it is.  I don't have to go through every ramification of their
18  inability to present evidence.
19        MR. WILLIAMS:  Well, I could argue I would much rather
20  have an actual order that there is an adverse inference against
21  them establishing market harm or actual damage.
22        THE COURT:  That's not happening today. After the
23  deposition we'll see what factors -- right now it is
24  conceivable, although somewhat bizarre, that the plaintiffs
25  would have no documents, other than a handful, about their

1    licensing efforts.  Frankly, that boggles the mind, but it's
2    conceivable.  Obviously after deposition you may have a much
3    better record.  At the moment, innocent, non-innocent, intent
4    to deprive, is it paper, is it ESI, different standards, who
5    knows?
6              MR. WILLIAMS:  Well, she might know.  I think under
7    the ESI standard --
8              THE COURT:  You have seen what happens when lawyers
9    make representations, which is to say it may not be worth the
10   oral paper it's written on.
11             MR. WILLIAMS:  Yes, your Honor, and I'm certainly not
12   making representations about what they have and don't have.
13   But I think under the ESI rule, 37(e) I believe it is, intent
14   to deprive can be established by the failure to issue a hold
15   letter.  I think this is Sekisui America v. Hart, 945 --
16             THE COURT:  Mr. Hirsch is supposed to write himself a
17   letter, or his lawyer is supposed to write himself a letter,
18   and as the Second Circuit has held, it's not the question of a
19   letter, it's the question of was a litigation hold in place.
20   We don't know whether a litigation hold was in place or not.
21   At this point all you know is they don't have certain
22   documents.
23             Why don't you take Mr. Hirsch, and to extent this
24   applies to Janik as well, their deposition, and see where it
25   goes.

1          MR. WILLIAMS:  Well, I will.  I would submit to you
2     though, from what they produced, which is a very small number
3     of documents, it appears that they received monthly statements
4     from the New York Post, in Mr. Hirsch's case, and also from
5     Splash, as she referred to.  We only have one month from each,
6     I believe.  The case has been pending since September 2016.
7          THE COURT:  Hold on.  What's the story on these
8     monthly statements?
9          MS. TSYVKIN:  Again, your Honor, the story doesn't
10    vary.  This is what the plaintiff has.
11         THE COURT:  What happened to the monthly statements
12    they have gotten since the date the complaint was filed?
13         MS. TSYVKIN:  I'm not at liberty to discuss right now
14    whether they actually received a monthly statement.  I'm not
15    aware of the fact.  What I have gone through with my client is
16    this is the information we will need, what do you have, can you
17    get it, can you contact them, did you contact them, and follow
18    up with that.  Aside from --
19         THE COURT:  To the extent your clients and your firm
20    is going to make Mr. Williams subpoena non-parties, Splash, the
21    New York Post, et cetera, I'm going to shift the cost of that
22    to you.  That's number one.
23         Number two, if it turns out your clients have been
24    getting monthly statements or quarterly statements or whatever
25    that are responsive to the document requests that are relevant

to the claims and defenses in the litigation and they haven't preserved them, they got problems.  So considering the monetary value of this case, it's in your interest to settle sooner rather than later.

In the meantime, I understand your arguments, Mr. Williams.  Save it until you get a better record either from the Post and/or splash or from the Janik and/or Hirsch depositions.  At the moment, I am certainly precluding Janik and Hirsch from any documents or any oral testimony about licensing agreements or licenses other than what they have produced documents on.

MR. WILLIAMS:  Thank you, your Honor.  If I could just raise a couple of other issues.

THE COURT:  Quickly.

MR. WILLIAMS:  Yes, your Honor.

Plaintiff Janik was hired by Spin, my client's predecessor, numerous times to take photographs, and he took a photograph of the CEO of the company which is the photo at issue in this case.  He has not produced any documents other than recent email exchanges, and that's only a handful of pages related to his hiring by Spin.

And in the interrogatory responses he's very evasive and does not really admit to the fact that he was paid by Spin.  We have no tax returns.  We have no bank statements.  I would submit on the issue of licenses, even if they don't get monthly

1    statements, they should have given us bank records that would
2    reflect how much the New York Post was paying Mr. Hirsch, how
3    much Mr. Janik was receiving for licenses.
4              THE COURT:  But you've gotten -- in terms of Janik and
5    licenses, the answer is if he hasn't produced anything, then
6    the answer is deemed to be zero.  As to whether he was an
7    employee or a freelancer or whatever, first of all, obviously,
8    although there has been a change of ownership, Spin might have
9    these documents, or its predecessor, and you could ask him at
10   his deposition.  At the moment I understand your frustration,
11   and the Court joins in it, but you haven't made enough of a
12   record to get further preclusion.
13             MR. WILLIAMS:  Understood, your Honor.  And I am
14   understanding you that on the interrogatories you don't want to
15   go through them, you want me to do the depositions and get the
16   information that way.
17             THE COURT:  Since a lot of them are ones that if the
18   responses had not been so egregious, had I been looking at them
19   one by one I might have said it's not a proper interrogatory,
20   it's the subject of a deposition, don't push your luck.
21             But you've gotten an admission that one of them thinks
22   the licensing value was $500 and the other thinks it's a
23   thousand, if I'm remembering the answers I read over the
24   weekend, you will do with that as you wish, which certainly
25   means, folks, that even though the amount under the copyright

1   law is a multiple of a reasonable licensing fee, let's say it's
2   a 10 times multiple, that's 5,000 for one and 10,000 for the
3   other, I got to think you're spending a thousand bucks today,
4   this isn't the first court conference, you all need to
5   seriously consider what you're doing on settlement.
6           MR. WILLIAMS:  Understood, your Honor.
7           THE COURT:  Anything else?
8           MR. WILLIAMS:  Just very, very quickly, two points --
9   well, I will limit it to one because I know you need to wrap
10  up.
11          So I had depositions on the calendar this week, the
12  17th and the 19th.  You gave me an extension to the end of --
13  May 26, I believe, to take those depositions, so that I could
14  review what was produced.  Mr. Liebowitz represented to me that
15  his clients are not going to be available on the 17th or 19th
16  and also were unlikely to be available for the rest of the fact
17  discovery period.
18          THE COURT:  Hold on.
19          MS. TSYVKIN:  Your Honor, Mr. Janik, plaintiff Janik
20  is available on the 17th, it's just he's available for a video
21  conference.
22          THE COURT:  No.  Come on, he brought the lawsuit here.
23  He's going to show up for his deposition here or he could
24  dismiss the case.  That's the choice.  You've known about the
25  discovery deadline for a long time.  You have known about those

H5FTJANC

1  two target dates.  Where is Mr. Janik?
2          MS. TSYVKIN:  He's in Vermont, but that's not the
3  reason, the reason being he's permanently disabled.  He has a
4  hip replacement.
5          THE COURT:  How does he expect to testify at trial?
6          MS. TSYVKIN:  Well, should it gets to that point we
7  would discuss how to get him to New York to trial.
8          THE COURT:  Why did he sue here instead of Vermont?
9          MS. TSYVKIN:  Just he contacted us, the defendant is
10 here.
11         THE COURT:  I suspect the defendant may also be in
12 Vermont.
13         MS. TSYVKIN:  As far as jurisdiction is concerned,
14 it's an easier case to make in the Southern District.
15         THE COURT:  You know, you can't have it both ways.  So
16 he is showing up for his deposition.
17         MR. WILLIAMS:  This is the first I have been told of
18 the disability, your Honor.  I was told last week that it was a
19 death in the family that was the cause of not being able to
20 appear.
21         And when is Mr. Hirsch available?
22         MS. TSYVKIN:  Mr. Hirsch is available on -- it's
23 actually past the extension that you provided, so May 29
24 Mr. Hirsch is available, or on June 6.
25         THE COURT:  Why isn't he available on the previously

1   set date of the 19th?
2           MS. TSYVKIN:  I believe he's traveling during that
3   time.
4           THE COURT:  How did you set that date?
5           MR. WILLIAMS:  I noticed the date and never heard any
6   objection until last Friday, your Honor.
7           THE COURT:  He's testifying on the 19th and Janik on
8   the 17th.  Court ordered.  Doesn't show, case over, as to
9   either or both.  Are we clear?
10          MS. TSYVKIN:  We're clear, your Honor.
11          THE COURT:  Okay.
12          MR. WILLIAMS:  Thank you, your Honor.
13          THE COURT:  All right.  Where are we on experts?  Are
14  one or both of you are still thinking about it?
15          MR. WILLIAMS:  Yes, your Honor, we are still intending
16  to designate on the 26th, as you ordered, an in-house expert.
17  I have not yet heard from their firm about whether they intend
18  to name an expert.
19          MS. TSYVKIN:  I don't have any information on experts
20  right now.  I suppose that doesn't surprise you.
21          THE COURT:  I don't know if Mr. Liebowitz is just
22  tossing you in here as the sacrificial lamb today.  When are
23  you going to know, or who is going to know?
24          MS. TSYVKIN:  We're going to know as soon as possible.
25  I imagine in these sort of cases we typically retain an expert

1    to give an evaluation.
2             THE COURT:  First of all, the expert report is
3    imminently due, so this sounds like a dance.  So I will give
4    you until May 26 to disclose whether there is an expert or not
5    on your side, and the report as well.
6             MR. WILLIAMS:  Just a note, your Honor, last
7    conference you ordered them to disclose that by May 19.
8             THE COURT:  Okay.  Then that will remain the deadline.
9             Now let's set a new motion date.  Is there going to be
10   a summary judgment motion?
11            MR. WILLIAMS:  Without having taken the depositions, I
12   can't answer that for sure, but I suspect we will at least have
13   a partial motion, your Honor.
14            THE COURT:  So let's move everything up basically a
15   month.  Summary judgment notification will be June 5, and
16   subject to getting whatever clearance you need from Judge
17   Koeltl, either the summary judgment motion or the pretrial
18   order will be due June 19.  If there is going to be an expert
19   from the plaintiff then we revert back to original schedule.
20            MR. WILLIAMS:  Okay.
21            THE COURT:  All right. Settlement, what can we do to
22   advance the ball?
23            MR. WILLIAMS:  We go off the record for that?
24            THE COURT:  Yes, Mike, we're off.
25                 (Discussion held off the record)

1       THE COURT:  Usual drill, the Court's rulings are on
2  the transcript.  There will not be any other documentation,
3  other than except possibly a minute entry on the docket.  And
4  I'm not going to set another conference date at this point.
5  You're at the point of no return.  You will either settle the
6  case or you won't.  You will take the depositions, they will be
7  experts or one expert, and you'll all go from there.
8       If any further disputes come up because of the
9  depositions or at the depositions, you know where to find me.
10 And if you really think there is something more I can do to
11 help you on settlement, contact my chambers, but of course all
12 deadlines remain in effect and are not going to be changed
13 unless and until you're able to report that there is a
14 settlement agreement in principle.
15      I'm going to require both sides to purchase the
16 transcript, and with that we are adjourned.
17      MR. WILLIAMS:  Thank you, your Honor.
18      MS. TSYVKIN:  Thank you, your Honor.
19                              o0o