```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

STEVEN HIRSCH,

            Plaintiff,

       v.                              16 Civ. 7308 JGK AJP

SPIN MEDIA LLC, et al.,

            Defendants.

------------------------------x
                                       June 14, 2017
                                       9:10 a.m.



Before:

                 HON. ANDREW J. PECK,

                                       U.S. Magistrate Judge


                     APPEARANCES


LIEBOWITZ LAW FIRM, PLLC
     Attorneys for plaintiff
BY:  YEKATERINA TSYVKIN, Esq.
            Of counsel


MITCHELL SILBERBERG & KNUPP, LLP
     Attorneys for defendants
BY:  JOHN MATTHEW DEWEESE WILLIAMS, Esq.
            Of counsel
```

1       (In open court)

2       (Case called)

3       THE COURT:  Be seated.

4       All right.  I've read defendant's letter of June 7th,
5  Document No. 63, as well as the response that came in late last
6  night from plaintiff, which is Document 68.  At a minimum, it
7  seems to me that there is gross negligence on behalf of
8  Mr. Hirsch and his counsel in responding to court ordered
9  document requests.  The question will be what sanction is
10 appropriate.

11      As to the date of deposition, we have been through
12 that before, and that may or may not get defense counsel some
13 costs, but it is not worth spending much time on.

14      So what remedy do you suggest, Ms. Tsyvkin?

15      MS. TSYVKIN:  Good morning, your Honor.

16      We believe the last time when we met, your Honor had
17 said anything that was not reviewed in the documents that we
18 produced for defense counsel would be precluded.

19      THE COURT:  But I also ordered Mr. Hirsch to comply
20 with the document requests by a fixed date.  He clearly did not
21 do that, and it would appear, you know, you say in your letter
22 oh, he's just a bad record-keeper.  Counsel has an obligation,
23 no matter how bad Hirsch's recordkeeping practice is, to comply
24 with the federal rules.  It would appear that between your firm
25 and Mr. Hirsch, you took this as a joke.

1           MS. TSYVKIN:  Your Honor, I would really like to
2    challenge that characterization just because I know for a fact
3    that we looked at the requests, we looked at interrogatories,
4    we tried to translate what they mean to the plaintiff and got
5    the response that we got.  We did that on several occasions.
6           THE COURT:  He didn't even read the interrogatory
7    answers that he signed.  It is one thing to say on document
8    requests, you know, that you don't have to show the document
9    requests to the client as long as you've walked them through it
10   and told him what he has to get.  When somebody is signing
11   interrogatories and swearing to them under oath, are you really
12   telling me that it is okay that he just signed them because you
13   told him to sign them?
14          MS. TSYVKIN:  Your Honor, I did not tell him to sign
15   it.  I told him to review it and sign it.  He had it before
16   him.  I can't --
17          THE COURT:  He didn't, did he?  You admit that his
18   deposition testimony makes that clear?
19          MS. TSYVKIN:  It looks like he represented that he
20   didn't really read through them and he signed them, but the
21   e-mail contained everything that he needed to read them.  If he
22   says to me --
23          THE COURT:  Counsel, counsel, is that like saying, you
24   know, I'll swear to whatever at my deposition, I'll swear to an
25   affidavit without reading it because my lawyer told me to read

1    it and sign it and I didn't read it?

2            MS. TSYVKIN:  Of course not, your Honor.

3            THE COURT:  The interrogatories are the same thing.

4            MS. TSYVKIN:  I agree, your Honor.  I am pointing out

5    there is very little that counsel could do to police the fact

6    whether the interrogatories were, in fact, read.

7            THE COURT:  I disagree with that entirely.  That is

8    called laziness or cheapness on plaintiff's counsel's side.

9    You sit with the client and you go through them and you make

10   sure he understands what he is signing.

11           MS. TSYVKIN:  On more than one occasion we sat with

12   him and went through the questions and the answers, and then

13   when the final thing was complete, we e-mailed it to him with

14   specific instructions were to review and sign.

15           THE COURT:  Okay.  You know, how much money do you

16   think this photo is worth because the sanction here of

17   attorney's fees is probably bigger than the licensing fee or

18   the copyright-enhanced licensing fee for this photo.  You're

19   spending an awful lot of court time, and yet your client isn't,

20   you know?  He deleted e-mails during the pendency of the

21   litigation or while litigation was anticipated.  Come on!

22           What is going on here, other than this is a case

23   brought by counsel for counsel fees, not a case brought by the

24   clients.

25           MS. TSYVKIN:  Your Honor, this is definitely a case,

1   and he represents this throughout the deposition, where he has
2   a lot of cases going on and he does entrust to his counsel
3   certain aspects of the case to carry out.
4            We believe we do that to the best of our ability and
5   we expect our clients still to meet their obligations.  It is
6   very difficult to again make sure that someone understands
7   fully and has read the document before they sign it.  I have to
8   at some point believe if he signs something, he has reviewed
9   it.
10           THE COURT:  I am not talking about that.  How about
11  was he instructed not to delete any information that could be
12  relevant to his licensing practices?
13           MS. TSYVKIN:  Absolutely, your Honor, that is just
14  part of regular instructions that we give in the beginning of a
15  case, just a regular general litigation hold.  What he
16  perceives to be important to this particular case --
17           THE COURT:  That is, that is the problem, counsel.
18  That is your job.
19           MS. TSYVKIN:  Yes, your Honor.  I would like to point
20  out in the deposition he mentions oh, well, you know, these
21  particular records didn't have anything to do with the
22  photograph in question.
23           THE COURT:  That is called he's interpreting, he is
24  interpreting the federal rules, when I ordered you to have him
25  produce material.  For him to say well, you know, this didn't

have anything to do with the specific photo so it doesn't matter is just saying he's determining what the rules are. He was ordered to respond to their document requests. That is a court order.

         MS. TSYVKIN:  Yes, your Honor.

         THE COURT:  He violated that court order, so now the question is what is the appropriate sanction?

         I am really tempted at this point to dismiss the case, so you better come up with an explanation. He deleted his e-mails. He didn't search for documents. I guess I'll have to invade the privilege a little between my order saying all objections are overruled, answer every one of the document requests. Did you sit down with him and make sure he did an appropriate search, yes or no?

         MS. TSYVKIN:  We spoke to him, yes, on more than one occasion about --

         THE COURT:  Who was supposed to do the search, him or you?

         MS. TSYVKIN:  He was supposed to do the search.

         THE COURT:  Were you supervising it in any way?

         MS. TSYVKIN:  Just checking it and saying did you contact --

         THE COURT:  Did you do it --

         (Multiple voices)

         THE COURT:  What did he say?

1           MS. TSYVKIN:  He said I tried, I tried to explain and
2    I am going to get to it.
3           THE COURT:  I am going to get to it?  He seems to be
4    totally disregarding court orders.  What do you mean I'm going
5    to get to it?  And you let him get away with that?
6           MS. TSYVKIN:  At one point we decided to take the task
7    of contacting certain third parties ourselves, and we just
8    couldn't get far because they said he has to contact us, so we
9    made an attempt at least --
10          THE COURT:  Then did you go back to him and say the
11   court ordered you to do this, now do it?
12          MS. TSYVKIN:  We did, your Honor.  We relayed the fact
13   this was very pressing, there were complete deadlines.
14          THE COURT:  And he ignored you, correct?
15          MS. TSYVKIN:  I can't represent the fact he ignored
16   me.
17          THE COURT:  He didn't comply?
18          MS. TSYVKIN:  I believe his attempts were insufficient
19   to produce documents that were responsive, that is what I
20   really believe.
21          THE COURT:  Why should I not, therefore, dismiss the
22   case?
23          MS. TSYVKIN:  Because I believe preclusion would be a
24   less --
25          THE COURT:  Preclusion is not appropriate when this is

1  information that they could use to argue that if the
2  information were there, his license fee for this would have
3  been $2.50 or whatever.
4           MS. TSYVKIN:  Yes, your Honor.  I believe we addressed
5  that point last time when we discussed that they would, of
6  course, subpoena both the --
7           THE COURT:  That is not -- counsel, counsel!
8           So he avoids contacting Splash in the New York Post
9  ignoring, in essence, your instructions for him to do so, and
10 now I should make them do this?  Fine.  Here is the answer.
11          Defendant may argue to the jury that -- well, I will
12 let defense counsel.  Give me the adverse inference instruction
13 you would like with respect to licensing fees.
14          MR. WILLIAMS:  Thank your Honor.  Good morning.
15          If I could first just speak to the point about
16 dismissal or default judgment.  So under Rule 37 (b), the three
17 factors, I think we have established all of them.  Under Second
18 Circuit law, if you do absolutely nothing to comply with a
19 court order, which is clear that is what happened here, that is
20 enough under 37 (b) for dismissal.
21          With respect to lesser sanctions, I would submit we
22 have already tried that, your Honor has already tried that
23 twice.  You sanctioned them the very first time to try to get
24 them to do the job, and they still didn't do it, both counsel
25 and the plaintiff.

1          We issued an adverse inference already, and between
2  the time you did that and the deposition, which was over two
3  weeks, he did nothing to try to find the documents even though
4  he knew they might exist in some cases and he deleted other
5  things in-between that time as well.
6          THE COURT:  I am not prepared to dismiss the case at
7  this point.  Tell me, remind me what adverse inference I
8  previously gave, which I thought was just evidence preclusion,
9  and what you want now.
10          MR. WILLIAMS:  Yes, your Honor.
11          The adverse inference that you gave last time did not
12  rely on any licenses or testimony that he had not already
13  produced.  He produced a small number, but I would ask at the
14  very least he not be able to rely on those, either, because it
15  essentially allows him to cherry-pick things he wants to use
16  and withhold things he doesn't want to use.  The other things I
17  would ask for adverse inference of no actual damages.
18          I previously requested an adverse inference he failed
19  to present any evidence under the four factors for fair use.
20  You're allowed, I believe, and I request you instruct the jury
21  to presume the documents were unfavorable to his position, and
22  then also one thing we would like to establish is that there is
23  no willfulness here and that unauthorized uses of photographs
24  on the internet is a very common thing that happens frequently.
25          He failed to produce a number of instances where his

1   photos were used without permission, so we would like an
2   adverse inference that essentially it is common for his photos
3   to be used without permission.
4           THE COURT:  You weren't willful because he didn't keep
5   certain records?  No.  That is ridiculous.
6           MR. WILLIAMS:  The idea is one piece of our argument
7   why we are not willful, and they can't establish that it is
8   very common for people to misunderstand online when they are
9   online --
10          THE COURT:  I assume you asked him those questions?
11          MR. WILLIAMS:  I asked him about the lawsuits they
12  disclosed.  Essentially the request required production of all
13  instances he was aware of with unauthorized use, and all they
14  gave me was a list of lawsuits.  I was wanted to ask him about
15  those, but not anything that they didn't rely on.
16          THE COURT:  Did you ask him the general question?
17          MR. WILLIAMS:  I did.
18          THE COURT:  And he answered?
19          MR. WILLIAMS:  He did answer the question, yes.
20          THE COURT:  That's all you're getting on that.  Are
21  you going for statutory damages or actual damages?
22          MS. TSYVKIN:  It looks like if your Honor's going to
23  issue, you know --
24          THE COURT:  What are you seeking?
25          MS. TSYVKIN:  Statutory damages.

1           THE COURT:  Only?

2           MS. TSYVKIN:  We believe so, yes.

3           MR. WILLIAMS:  If I may on that, your Honor?  We have

4    an argument we presented to Judge Koeltl that they're not

5    entitled to statutory damages.

6           THE COURT:  Then they get nothing.  That is up to

7    Judge Koeltl on that argument.

8           I am going to hold you, and that is easy because it is

9    not a preclusion, you're conceding no claim for actual damages

10   in this case.  That should, since most of these documents go to

11   the damage issue, that should be sufficient remedy, plus I am

12   going to give defendant the costs of the deposition, entire

13   cost, transcript and attorney's fees.

14          How much was the transcript?

15          MR. WILLIAMS:  I don't know the exact amount of the

16   transcript, your Honor.  I believe it would be in the hundreds

17   of dollars range.  What I had asked for in the letter was not

18   just the cost of the deposition, but also preparing various

19   letters and attending various conferences which I have

20   calculated if you're interested in knowing that number.

21          THE COURT:  Yes.  What is the number?

22          MR. WILLIAMS:  The total number between May 13 and

23   today dealing with these particular specific issues, which only

24   includes half the time for the deposition, is something over

25   $15,000.

1              THE COURT:  And remind me what is your hourly rate?

2              MR. WILLIAMS:  $635.00, your Honor.

3              THE COURT:  What is plaintiff's position?

4              MS. TSYVKIN:  Plaintiff would say that this is a very
5     onerous sanction.

6              THE COURT:  Dismiss the case if you wish and I won't
7     impose any financial sanctions.  Otherwise, you have admitted
8     today that your client paid no attention to this case, ignored
9     specific instructions from you with the, "I'll get to it, I'll
10    get to it."  He decided he had a trip planned and he was going
11    to go on it despite a court order for him to show up for a
12    deposition.  I am not sympathetic to your client or your law
13    firm in the least.

14             So give me an argument why it should not be this
15    amount or agree to pay a certain amount so I don't have to
16    enter it as a sanction as opposed to a voluntary payment, or
17    agree to dismiss the case with prejudice.

18             MS. TSYVKIN:  We believe that there has been a series
19    of conferences initiated by defense counsel.

20             THE COURT:  All of which were because you didn't do
21    your job.  Yes, there were several conferences.  You've lost at
22    every one of them.

23             MS. TSYVKIN:  I believe we didn't lose the last one
24    where your Honor considered no one really got to walk away a
25    winner last, at the last conference.  I am not sure exactly why

1    the costs of that conference are necessarily added to this.
2              MR. WILLIAMS:  That is something I was going to raise
3    later, and that your Honor reserved decision on that issue
4    pending whether or not Mr. Janik appeared for his deposition,
5    which he chose not to do, so we did insert in our letter
6    request counsel be paying for that as well.
7              THE COURT:  In general, we can do this the hard way or
8    the easy way.  You want to have him make a motion with all of
9    the hourly rates for each conference and we'll parse it, but
10   I'll give him costs for making that motion, which is
11   permissible under the rules, or you want to offer him 12,000
12   instead of 15 or whatever number you think is appropriate, and
13   it is joint and several between Mr. Hirsch and your firm on the
14   plaintiff's side.  Pick a number.  See if you can get defense
15   counsel to agree, but you've got another case almost ready
16   behind you.  Let's get this done.
17             MS. TSYVKIN:  I would like to perhaps speak to the
18   partner of the firm.
19             THE COURT:  No.  He didn't show up today.  He doesn't
20   get a vote.  You're the lawyer for the plaintiff.
21             MS. TSYVKIN:  Yes, your Honor.
22             We would like to know -- I would like -- do you want
23   me to give a number, your Honor?
24             THE COURT:  Yes.
25             MS. TSYVKIN:  We believe perhaps 4,000 would be an

1  appropriate.

2         THE COURT:  Why?

3         MS. TSYVKIN:  We believe --

4         THE COURT:  How many hours was the deposition?

5         MR. WILLIAMS:  It was roughly three hours, your Honor.

6         Of course, there was a lot of preparation time as

7  well.  I would just say that the number I gave, the $15,000

8  number was specific to Mr. Hirsch.  If you include the

9  deposition and prep time for Mr. Janik, that is another

10  $4,820.00.

11         MS. TSYVKIN:  Your Honor, we believe --

12         THE COURT:  Monty Hall, "Let's Make a Deal,"

13  $10,000.00, satisfactory to both sides?

14         MR. WILLIAMS:  I would prefer the 12,000 you said the

15  first time, your Honor, given that the combined number is close

16  to 20.

17         THE COURT:  Is it satisfactory?

18         MR. WILLIAMS:  Yes, your Honor, I will accept the

19  $10,000.00.

20         THE COURT:  Satisfactory?

21         MS. TSYVKIN:  I have no choice.

22         THE COURT:  You have the choice of making him make a

23  motion, at which point it will probably be 15,000 plus the cost

24  of the motion.

25         MS. TSYVKIN:  Can I dismiss the case?

1              THE COURT:  Yes.
2              (Pause)
3              MS. TSYVKIN:  Then I would like to dismiss the case.
4              MR. WILLIAMS:  I assume that is with prejudice.
5              MS. TSYVKIN:  Yes, with prejudice.
6              THE COURT:  Fine, case dismissed with prejudice.
7         The only remaining costs is your firm is paying for
8    this transcript, and you all should notify Judge Koeltl's
9    Chambers I will be entering the dismissal order shortly, but
10   that the 11:30 conference with him is unnecessary, okay?
11             MR. WILLIAMS:  Thank your Honor.
12             THE COURT:  We are adjourned.
13             (Court adjourned)
14
15
16
17
18
19
20
21
22
23
24
25