UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRAN JANIK and STEVEN HIRSCH,<br><br>      Plaintiffs,<br>  v.<br><br>SMG MEDIA, INC.,<br><br>      Defendant. | CASE NO. 16-CV-07308-JGK-AJP |

**RESPONSE IN SUPPORT OF DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS UNDER 17 U.S.C. §§ 505 AND 1203**

9580290.2

i

## CONTENTS

| | | |
|---|---|---|
| **I.** | **PRELIMINARY STATEMENT** ................................................................................ 1 | |
| **II.** | **ARGUMENT** ............................................................................................................... 6 | |
| | A. | Janik's Voluntary Dismissal Cannot End The Analysis. ................................. 6 |
| | B. | Janik's Attempt To Blame SMG For The Fees And Costs It Was Forced To Incur Is Based On Mischaracterizations And Revisionist History. ............. 6 |
| | C. | Compensation And Deterrence Weigh Heavily In Favor Of Granting SMG's Motion. .................................................................................................. 8 |
| | D. | Other Factors Weigh Heavily In Favor Of Granting SMG's Motion. ............ 10 |
| | E. | Janik Has Not Met His Burden To Demonstrate Financial Hardship. ........... 13 |
| **III.** | **CONCLUSION** ......................................................................................................... 14 | |

I.  **PRELIMINARY STATEMENT**

Plaintiff Fran Janik ("Janik") and his counsel concede that the number of hours worked by Defendant SMG Media, Inc.'s ("SMG") counsel to prevail in this copyright infringement case was reasonable. Opposition Memorandum ("Opp.") at 3. They also concede that the hourly rates charged by SMG's counsel were reasonable. *Id.* Accordingly, if the Court concludes that the purposes of the Copyright Act favor awarding SMG recoupment of its attorneys' fees and costs, there is no need for the Court to conduct a full lodestar analysis. *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (In the Second Circuit, the lodestar method, which is obtained by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate, creates a "presumptively reasonable fee." ); *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 360 (S.D.N.Y. 2006) ("The party that asks the court to depart from the lodestar amount bears the burden of proving that such a departure is necessary to the calculation of a reasonable fee."). SMG has thus established that the $50,631.00 in attorneys' fees and $255.24 in non-taxable costs requested in its motion were appropriately incurred in this case.

Plaintiff's concession on the issues of reasonable hours worked and reasonable hourly rates billed is remarkable given that his counsel, in virtually the same breath, hurls unwarranted and baseless accusations that SMG's counsel only litigated the case to increase its billable time (Opp. at 2) and that SMG pursued "scorched-earth" litigation tactics. Liebowitz Declaration ¶19. There is, quite simply, no merit to these smears. If either were true, Janik would be able to identify unnecessary tasks, inflated hourly entries for work performed, unnecessary motions, and examples of abusive discovery. He cannot, because none of those things happened.

Instead, what transpired was that Janik filed a meritless case, apparently hoping for an unjustifiably large settlement payment that was completely divorced from the purported actual damages at issue. *See* ECF 96-7, May 23, 2017 Transcript at 11 (THE COURT: … "I'm

1

beginning to believe what defense counsel is saying, which is that your firm for these plaintiffs, and perhaps others, brings lawsuits hoping to get a fast settlement buck, and move on."). When that payment was not forthcoming, he and his counsel refused to produce discovery; refused to appear for a deposition; and, ultimately, threw in the towel. Janik now claims that he should get credit for, finally, voluntarily dismissing the case with prejudice. However, when his decision to do so is considered in context, it becomes clear that this belated decision should not absolve him of his responsibility under the Copyright Act to pay at least some portion of SMG's fees and costs.

First, Janik's decision to dismiss with prejudice was based on the Court informing him that, if he did not do so, and if he skipped his second court-ordered deposition, the Court would issue discovery sanctions and dismiss the case with prejudice. *Id.* at 12-16. Had that transpired, Janik would have faced monetary discovery sanctions and a judgment against him. At that time, in addition to the discovery sanctions, SMG would have been entitled to request its attorneys' fees and costs under the Copyright Act. What Janik avoided by dismissing his case were discovery sanctions. That his counsel apparently did not research whether, after dismissal with prejudice, Janik might also have to nevertheless reimburse at least some of SMG's other fees and costs under the Copyright Act, is not something for which SMG should be held responsible. Nor was it an issue before the Court at the time of dismissal.

Second, Janik's description of the settlement negotiations between the parties, and his counsel's baseless accusation that SMG failed to negotiate in good faith, Liebowitz Declaration ¶ 19, are inaccurate and untrue. Rather than offering "one paltry number" (*id.* at ¶ 18) to settle the five cases (for six plaintiffs) that Janik's counsel had filed against SMG and its successors in interest, SMG made conscientious offers, of different amounts to differently situated plaintiffs, based on the strengths (if any) and weaknesses of each plaintiff's claim. For example, SMG

offered larger settlements to plaintiffs who arguably could have received statutory damages awards and attorneys' fees under the Copyright Act, as a result of purportedly timely registrations. Indeed, SMG offered Steven Hirsch, the other plaintiff in the instant litigation, more than SMG offered to Janik, for that very reason. The fact that SMG's offer to Janik was lower than the other offers was based on how weak his case was and the fact that he lacked a timely registration or any evidence whatsoever that would have entitled him to fees and costs for his baseless claim that SMG removed "copyright management information" from the photograph at issue. *See* 17 U.S.C. §§ 1202, 1203.

      While it is true that SMG, at times, made its settlement offers contingent on resolving all of the five cases concurrently,[1] this was done for two legitimate reasons. The first reason was that SMG believed that it could prevail against Janik and Hirsch. This case was proceeding to its conclusion faster than the other cases and SMG believed that, if it won this case, it could set precedents that would finally cause Janik's counsel to make reasonable counteroffers. For that reason, it did not want to settle this case and then have to litigate all of the other cases. The second reason was that SMG wanted to demonstrate that it was willing to litigate all of the cases, if necessary. The rash of low-value copyright infringement cases being filed in this District caused SMG great concern, and it believed that quick settlements by other defendants at unreasonable numbers with no relationship to the fact that the actual damages involved, if any, are lower than the cost of filing a complaint, were the cause for this rash. It wanted to resolve all of the cases in a timely, reasonable way that would not waste judicial, nor its own, resources and

---

[1] SMG did, at a court-ordered mediation in one of the other cases, offer to settle that case alone, and Mr. Liebowitz rejected that offer. In addition, at the outset of the negotiations, there were only three claims asserted against SMG and its successor by Mr. Liebowitz's client, including the two claims in this case. SMG made good faith offers at that time to settle the three claims. Mr. Liebowitz did not object to negotiating regarding all three claims at the same time, but demanded far more money than SMG was willing to pay.

3

time. SMG's strategy ultimately worked, despite Mr. Liebowitz's representation that he supposedly has a "policy" against "settl[ing] cases in bulk." Liebowitz Declaration ¶18. Less than one month after this case was closed, SMG was able to settle, in principle, all of the other cases at the same time.[2]

Third, the U.S. Supreme Court has encouraged defendants in copyright cases to not unduly incentivize plaintiffs to file unreasonable cases by agreeing to unreasonable settlements that do not reflect the policies of the Copyright Act. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016) (Copyright Act provides for fee awards, in part, so that "a person defending against a patently meritless copyright claim has every incentive to keep fighting, no matter that attorney's fees in a protracted suit might be as or more costly than a settlement."). SMG did its part in this case. It did not agree to pay Janik and his counsel to drop a case where Janik himself admits that he took the photograph at issue for SPIN's "promotional purposes." ECF 96-12 (Interrogatory Response No. 2). Doing so would only have encouraged additional suits by Janik for use of other, similarly licensed photographs. The need to deter such suits is one of the factors the court "must" consider under the *Fogerty v. Fantasy* factors. *Janik v. Spin Media, Inc.*, 2017 U.S. Dist. LEXIS 199343, at *7 (S.D.N.Y. Dec. 4, 2017).

Fourth, all of the other *Fogerty* factors also weigh in favor of awarding SMG its requested fees and costs. Janik's claims were objectively unreasonable because they "ha[d] no sufficient factual basis" and "no sufficient legal basis." *Briarpatch Ltd. v. Geisler Roberdeau, Inc.*, 2009 U.S. Dist. LEXIS 111292, at *13, 15 (S.D.N.Y. Nov. 30, 2009). Indeed, the claims were frivolous because the factual and legal bases for his claims were "indisputably absent." *TCA TV Corp. v. McCollum*, 2017 U.S. Dist. LEXIS 86138, at *36 (S.D.N.Y. June 5, 2017). As

---

[2] After negotiation of the long-form settlement agreements, stipulations of dismissal were submitted and approved in all four cases.

4

he ultimately conceded in *Janik v. Mediapost Communications, Inc.,* 2017 U.S. Dist. LEXIS 98390, at *7-8 (S.D.N.Y. June 26, 2017), by withdrawing his claims under 17 U.S.C. § 1202, Janik has no evidence whatsoever that the photograph at issue included copyright management information that SMG, or its predecessors, intentionally removed.[3]  *See* ECF 96-13; Memorandum of Law In Support ("Memo") at 12-13.  Moreover, as discussed above, he admits that he took the photograph for SPIN to use it for "promotional purposes."  Janik Declaration ¶6 ("Mr. Guccione Jr. and I agreed that I would photograph him in his office for the purpose of promoting his new music magazine, Spin Magazine.").  Suing SPIN years later for doing exactly that was outrageous and the fact that he brought such meritless claims without being willing to cooperate in the discovery process reveals his true motive: an undeserved settlement.  *See Agence Fr. Presse v. Morel*, 2015 U.S. Dist. LEXIS 189008, at *15 (S.D.N.Y. Mar. 23, 2015) (alterations in original), quoting *Torah Soft Ltd. v. Drosnin*, 2001 U.S. Dist. LEXIS 19217, at *15 (S.D.N.Y. Nov. 27, 2001) ("[A] party is improperly motivated where it asserts claims 'not because of [their] inherent merit,' but rather because the party seeks to 'knowingly gamble[] on an unreasonable legal theory in order to achieve a secondary gain - in this case, the leveraging of a settlement.'").

For all of these reasons and the reasons discussed below, SMG respectfully submits that the Court should grant its motion.  Notwithstanding Janik's empty assertions that he cannot afford to pay any judgment issued against him, Janik has not submitted any evidence to back up those assertions, and courts require more than mere words to lower otherwise appropriate fee

---

[3] Indeed, Janik's own declaration, submitted in opposition to SMG's motion, contains no attestation that the photograph was stamped with any kind of copyright management information when it was delivered to SPIN.  Instead, Janik's counsel, Mr. Liebowitz, attempts to submit testimony on this point in his lawyer declaration, despite lacking any personal knowledge regarding the issue.  Liebowitz Declaration ¶¶ 8, 10.  His testimony regarding facts that he has no first-hand knowledge of is completely improper and inadmissible.

awards. *See Harrell v. Van der Plas*, 2009 U.S. Dist. LEXIS 104828, at *23-4 (S.D.N.Y. Nov. 9, 2009) (The "failure to provide adequate and reliable financial information prevents the Court from exercising its discretion to reduce the presumptively reasonable fee award.").

## II. ARGUMENT

### A. Janik's Voluntary Dismissal Cannot End The Analysis.

Janik's primary argument is that he should not have to pay any of SMG's fees or costs because he voluntarily dismissed his case with prejudice. Opp. at 4. However, as Judge Koeltl already ruled, that does not provide Janik with immunity against SMG's motion. *Janik, Inc.*, 2017 U.S. Dist. LEXIS 199343, at *6. Instead, the Court must consider the *Fogerty* factors and exercise its discretion in the manner that best serves the purposes of the Copyright Act, including the Act's goal of allowing lawful uses of copyrighted works to take place without unwarranted threats and lawsuits resulting therefrom. *Kirtsaeng*, 136 S. Ct. at 1989.

While the Court determined at various discovery conferences how to address Janik's litigation misconduct under Rule 37's standards for awarding sanctions, the Court never considered the separate issue of whether the Copyright Act dictates that SMG should recoup its fees and costs as the prevailing party. As discussed below, it does.

### B. Janik's Attempt To Blame SMG For The Fees And Costs It Was Forced To Incur Is Based On Mischaracterizations And Revisionist History.

Although Janik insists that he "cooperated with his adversary and the Court at every juncture," (Opp. at 11) that is misleading, at best. In fact, he only provided responses to discovery pursuant to court orders; failed to provide adequate responses and documents even after the court orders;[4] failed to attend his court-ordered deposition; filed a meritless motion seeking leave to dismiss his case without prejudice after the former Chief Executive Officer of

---

[4] Janik asserts that he produced "many documents." Opp. at 9. In fact, he only produced twenty four pages in the entire case.

6

SPIN had already appeared for an all-day deposition and SPIN had invested significant resources in defending the case; and only voluntarily dismissed his case with prejudice to avoid monetary discovery sanctions and a dismissal with prejudice by the Court for failure to appear.[5]  This is not "cooperat[ion] at every juncture" or the behavior of someone who is diligently pursuing legitimate claims.  This is the behavior of someone trying to score the biggest buck possible at someone else's expense and then looking for the easiest (and free) exit ramp when his efforts fail.

That Janik's counsel now accuses SMG of "scorched-earth" litigation tactics (Liebowitz Declaration ¶19) is absurd.  Had Janik complied with his discovery obligations, SMG's counsel could have avoided much of the work that was ultimately necessary.  In addition, had Janik not filed his failed motion for leave to dismiss without prejudice, counsel could have avoided even more fees.  At every turn, it was Janik, not SMG, that drove up litigation costs.

Indeed, SMG litigated the case in a stream-lined fashion.  It served relatively few discovery requests targeting important information.  It sought documents and information from Janik himself, in the first instance, rather than subpoenaing third parties, which Janik ultimately insisted that SMG should have to do.  SMG also produced one senior executive as a Rule 30(b)(6) witness who could speak to all of the topics in Janik's deposition notice, rather than forcing Janik's counsel to depose multiple corporate witnesses.

SMG also made reasonable settlement offers throughout the pendency of the case.  Had Janik not initially demanded tens of thousands of dollars to settle a claim over a use of a photograph that, even in his own sworn interrogatories, he ultimately admitted could have been

---

[5] Although Janik claims, without support, that courts rarely award fees under the Copyright Act when cases are "dismissed relatively early," (Opp. at 13) the dismissal of Janik's case was hardly early.  In fact, the fact discovery period had ended, the parties were submitting summary judgment letters to Judge Koeltl, and the case was, had neither party obtained summary judgment, on schedule to be tried not long after a decision was issued on that subject.

licensed for $1,000, ECF 96-12 (Interrogatory Response No. 10),[6] the case could have been resolved when SMG's counsel first appeared in the case. His demands were especially unreasonable because he knew all along that he lacked a timely copyright registration and thus could not obtain statutory damages or attorneys' fees, even if he prevailed. *See* 17 U.S.C. § 412.

That Janik, after SMG's witness was deposed and SMG was on the verge of prevailing, finally offered to settle at an amount that SMG had previously put on the table does not excuse all of his other misconduct or make SMG the bad guy. First, the amount of SMG's prior offer was contingent on a variety of other terms, which were not met by Janik's later offer. Second, by that time, SMG saw on the horizon the need to conduct discovery, file potential dispositive motions, and potentially appear at trials in four other lawsuits involving similar claims, all filed by Janik's counsel. Absent a resolution of all of those lawsuits at once, SMG believed it was in its best interest to prevail in this case, which was moving quickly, and to use that precedent to help to convince the plaintiffs in the other cases, and their counsel, that their demands were unreasonable. Although a resolution on the merits of the claims in this case ultimately proved unnecessary, SMG still believes that its demonstrated willingness to litigate this case to a judgment, if necessary, resulted in settlements in the other four lawsuits eventually becoming possible.

    **C.**    **Compensation And Deterrence Weigh Heavily In Favor Of Granting SMG's Motion.**

As discussed above, the U.S. Supreme Court has held that defendants who prevail in copyright infringement cases deserve to be compensated for their role in preserving the Copyright Act's boundaries between lawful use of copyrighted material and unlawful use thereof. Janik argues that, even though SMG prevailed here, there is no need to compensate

---

[6] SMG does not concede that SPIN would have paid that much to license the use, even if it did not already possess a license or ownership interest in the photograph.

8

SMG because it is supposedly a "prominent media and publishing company," and companies "similarly situated do not require incentives." Opp. at 17.[7] Adopting such reasoning would fail to adhere to the purposes of the Copyright Act. Lawsuits tend to be filed against companies with resources to pay settlements and judgments because plaintiffs and their lawyers look for "deep pockets." Given this fact, a rule that discourages such litigants from defending themselves against unreasonable claims would result in the payment of settlements for meritless claims based on the cost/benefit analysis that the settlements are cheaper than litigating. That is not the result that the Supreme Court has instructed trial courts to seek to achieve. *See Kirtsaeng*, 136 S. Ct. at 1986*; see also Humphreys & Partners Architects, L.P. v. Lesserd Design, Inc.*, 152 F. Supp. 3d 503, 515 (E.D. Va. 2015) ("[T]he need for a fee award is greater for prevailing defendants than it is for prevailing plaintiffs, as prevailing defendants obtain no affirmative relief from victory on the merits."); *Harrison Music Corp. v. Tesfaye*, 293 F. Supp. 2d 80, 84 (D.D.C. 2003) ("Awarding attorney's fees addresses these goals because it enables people to vindicate or defend their rights where it would otherwise be uneconomical to do so.").

Just as defendants similarly situated to SMG deserve to be compensated, plaintiffs similarly situated to Janik, and indeed Janik himself, need to be deterred from bringing lawsuits such as this one. Without an award of attorneys' fees, plaintiffs like Janik are incentivized to take no-lose bets on unreasonable and baseless claims in the hopes of securing settlement payments. *See Baker v. Urban Outfitters, Inc.,* 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006) ("[A]n award of costs and fees is crucial here, so as to deter this plaintiff, and other similarly situated plaintiffs, from bringing unreasonable claims based on a cost/benefit analysis that tells such plaintiffs that they can score big if they win and that there will be no adverse consequences if

---

[7] SMG is not a prominent media company. It was created during the sale of SPIN's assets to Prometheus Global Media, LLC to handle certain matters after the transaction was completed.

they lose."); *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 668 (S.D.N.Y. 2001) ("This case presented a straightforward copyright infringement claim that was objectively unreasonable. . . . Failing to award attorney's fees to defendants in such situations would invite others to bring similarly unreasonable actions without fear of consequences.").

### D. Other Factors Weigh Heavily In Favor Of Granting SMG's Motion.

To argue that his claims, motivations and litigation misconduct were objectively reasonable, Plaintiff resorts (Opp. at 11-17) to identifying some of the worst actors from prior cases involving attorneys' fees motions and then asserting that fees should not be awarded here because Plaintiff believes that he is not as bad as these prior litigants. Plaintiff refers to the facts of such cases as "the gold standard," (Opp. at 13) and concocts a nonexistent rule that this standard must be met. This rhetorical tactic ignores the heart of the Copyright Act analysis. Indeed, these cases presenting egregious facts were litigated, not under the Copyright Act, but under the distinct standard for awarding fees based on the court's inherent powers. *See generally Sassower v. Field*, 973 F.2d 75 (2d Cir. 1992); *Richtone Design Grp., L.L.C. v. Classical Pilates, Inc.*, 2007 U.S. Dist. LEXIS 26998 (S.D.N.Y Apr. 10, 2007); *Quadrozzi v. New York*, 127 F.R.D. 63 (S.D.N.Y. 1989); *Dow Chem. Pac. v. Rascator Mar. S.A.*, 782 F.2d 329 (2d Cir. 1986). In such cases, the court analyzes whether to award fees based on whether the party appearing before it acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Sassower*, 973 F.2d at 80-81. Although SMG maintains that bad faith was present here in that Plaintiff concocted baseless claims to try to obtain an undeserved settlement, a showing of bad faith is completely unnecessary in a copyright case. *See Screenlife Establishment v. Tower Video, Inc.*, 868 F. Supp. 47, 52 (S.D.N.Y. 1994) ("[A] prevailing defendant may secure attorneys' fees, pursuant to 17 U.S.C. § 505, once the court finds that the plaintiff's claim was

10

objectively unreasonable; bad faith or frivolousness is not a prerequisite to an award of fees.").[8] Accordingly, Plaintiff's "gold standard" cases are actually red herrings.

Plaintiff also relies on opinions involving pleading motions and contends that (i) the allegations in those cases were similar to his own, (ii) the plaintiffs in those cases survived the pleading stage, and (iii) therefore his claims were objectively reasonable. Opp. at 10 (citing *Devocean Jewelry LLC v. Associated Newspapers Ltd.*, 2016 U.S. Dist. LEXIS 145593 (S.D.N.Y. Oct. 20, 2016) and *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596 (S.D.N.Y. 2010)). This logic is based on false equivalencies and presumes that Janik could back up the allegations in his pleading, which he could not. For example, Janik alleged that he was entitled to statutory damages and attorneys' fees (Amended Complaint ¶¶ 24, 25), even though he now admits that he was not because his registration was untimely. Opp. at 2. Janik also alleged SPIN never had "Plaintiff's permission or consent to publish the [p]hotograph," (Amended Complaint ¶ 16) and that SPIN "has never been[] licensed or otherwise authorized to reproduce, publically display, distribute and/or use" the photograph, (*id.* ¶ 16) even though he now admits that he took the photograph for "the purpose of promoting" SPIN. Janik Declaration ¶ 6. Janik also alleged that the photograph "contained copyright management information" and that SMG removed the information "intentionally, knowingly and with the intent to induce, enable, facilitate, or conceal their infringement of Plaintiff's copyrights," even though we now know that Plaintiff had no evidence to support either allegation, and to this day can only attempt to support the claim through improper testimony from his lawyer. *See* Liebowitz Declaration ¶

---

[8] Nevertheless, a showing of bad faith is a basis on which a court may award fees under the Copyright Act. *See Baker*, 431 F. Supp. 2d at 357 ("bad faith alone entitles [defendant] to a full award of its costs and fees").

10 ("Mr. Janik's photographs always have copyright management information on them.").[9] Regardless whether these false allegations would have survived a motion to dismiss,[10] that would not have made them true or rendered them reasonable assertions of law or fact. The bottom line is that SPIN had permission to use the allegedly infringed photograph for promotional purposes,[11] and there is no evidence that SMG removed any copyright management information. Moreover, Janik chose to sue even though he valued the alleged actual damages at $1,000, and his untimely registration rendered him ineligible for attorneys' fees or statutory damages. That decision was objectively unreasonable under 17 U.S.C. § 505.

---

[9] Janik attempts to distract the Court from his failure to produce any evidence that copyright management information was removed from the photograph by discussing the fact that *other photographs* published in SPIN were attributed to Janik at the time they were published. Janik Declaration ¶¶ 8, 9. His counsel then twists this testimony to argue that this "attribution credit functions as copyright management information for the purposes of the DMCA claim" (Opp. at 1) and that, thus, Janik was within his rights to request statutory damages and attorneys' fees under 17 U.S.C. § 1203. First, attribution is not required under the Copyright Act. 3 *Nimmer on Copyright* § 8D.03 (2017). What is actionable under the DMCA is intentionally *removing* attribution information to conceal infringement. 17 U.S.C. § 1202(b)(1). Second, whether *other photographs* published in SPIN with Janik's permission were attributed to Mr. Janik is completely irrelevant to whether his DMCA claim related to *the allegedly infringed photograph* had an merit. It did not. Neither party located any issue of SPIN magazine where the photograph was attributed to Mr. Janik or any copy of the photograph containing any copyright management information.

[10] The fact that SMG elected not to file a motion to dismiss is further evidence that it was not engaging in "scorched-earth" litigation.

[11] Plaintiff tries to dance around this dispositive admission by asserting that he was not a salaried employee of SPIN at the time he took the photograph and that he retained his rights in the photograph. Janik Declaration ¶¶ 5, 7, 10. However, SMG is not arguing at this time that the photograph was a work made for hire by Janik or that he assigned all rights to SPIN in a written agreement. Instead, SMG contends that Janik gave SPIN permission to use the photograph (*i.e.*, a license). Janik also asserts that it is "undisputed that Janik owns a valid copyright registration," (Opp. at 8) when SMG has never conceded that alleged fact. SMG's position is that the registration should have named SPIN or Mr. Guccione as a co-author of the photograph given Mr. Guccione's role, as SPIN's CEO, in the creativity expressed in the image. *See* Memo at 11.

12

### E. Janik Has Not Met His Burden To Demonstrate Financial Hardship.

In a last ditch effort to avoid a fees award, Janik asserts that he cannot afford to pay any judgment against him. However, the cases to which Plaintiff cites make clear that the relative financial positions of the parties is relevant only to the court's discretion to adjust an award *after* it has been resolved that such an award is appropriate. *Harrell*, 2009 U.S. Dist. LEXIS 104828, at *23; *see also Muller v. Twentieth Century Fox Film Corp.*, 2011 U.S. Dist. LEXIS 98248, at *6 (S.D.N.Y. Aug. 22, 2011) (internal citations omitted) (emphasis added) ("Although Muller's alleged insolvency may be considered in determining the magnitude of the award, his financial condition has no bearing on the question of whether to grant or deny an award of attorneys' fees. This is because the decision to award attorney's fees is based on whether *imposition of the fees will further the goals of the Copyright Act, not on whether the losing party can afford to pay the fees*.").[12]

Moreover, Plaintiff has not made the requisite showing of financial hardship to support a downward adjustment. Indeed, Plaintiff has submitted nothing more than conclusory statements regarding his financial situation, devoid of details or support. The "failure to provide adequate and reliable financial information prevents the Court from exercising its discretion to reduce the presumptively reasonable fee award." *Harrell*, 2009 U.S. Dist. LEXIS 104828, at *23-24 (declining to adjust award when party seeking downward adjustment based on inability to pay submitted "no concrete information" about his personal or professional assets); *Kanongataa v. ABC*, 2017 U.S. Dist. LEXIS 169534, at *4 (S.D.N.Y. Oct. 4, 2017) ("[R]eductions in fee awards based on an unsuccessful party's limited means typically, or at least often, are made in response to evidence rather than airy claims.").

---

[12] Plaintiff has not challenged Defendant's calculation of the proper attorneys' fees and costs award, nor offered any other argument that the amount should be adjusted downward.

In sum, Plaintiff's financial situation is neither relevant to the determination of whether attorneys' fees are appropriate nor sufficiently documented to support downward adjustment.

### III. CONCLUSION

Based on the foregoing and its other motion papers, SMG respectfully requests that the Court award to SMG its attorneys' fees and costs of $50,631.00 and $255.24, respectively.

DATED: Washington, D.C.
December 22, 2017

Respectfully submitted,

Mitchell Silberberg & Knupp LLP

By: /s/ J. Matthew Williams
J. Matthew Williams
1818 N Street, NW, 8th Floor
Washington, D.C. 20036-2406
Telephone: (202) 355-7900
Facsimile: (202) 355-7899

Christine Lepera
Hannah Junkerman
12 East 49th Street, 30th Floor
New York, NY 10017
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Defendant*

14