UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FRAN JANIK and STEVEN HIRSCH,         :

             Plaintiffs,        :        16 Civ. 7308 (JGK) (AJP)

          -against-        :        **OPINION & ORDER**

SMG MEDIA, INC.,        :

             Defendant.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

> Plaintiffs Fran Janik and Steven Hirsch brought this action against defendant SMG Media, Inc. ("Spin") alleging copyright violations under Section 501 of the Copyright Act and Section 1202(b) of the Digital Millennium Copyright Act ("DMCA"). (See generally Dkt. No. 26: Am. Compl.) Both plaintiffs voluntarily dismissed their separate claims. (Dkt. Nos. 56, 69.) Presently before the Court is Spin's motion for attorneys' fees and costs as the "prevailing party" under the Copyright Act and DMCA solely against Janik. (Dkt. No. 94.) For the reasons set forth below, Spin's attorneys' fees motion (Dkt. No. 94) is <u>DENIED</u>.

**FACTS**

**The Amended Complaint**

> While Spin seeks attorneys' fees against Janik, information about co-plaintiff Hirsch is relevant to and intertwined with Spin's fee application.

> Janik and Hirsch are professional photojournalists "in the business of licensing [their] photographs to online, print, and television stations for a fee." (Dkt. No. 26: Am. Compl. ¶¶ 5-6.)

> "In the 1980's Janik photographed the owner of Spin Magazine, Bob Guccione Jr., the eldest son of Penthouse magazine founder Bob Guccione" ("the Guccione Photograph"). (Id.

¶ 8 & Ex. A.)  "Janik is the author of the [Guccione] Photograph and has at all times been the sole owner of all right, title and interest in and to the [Guccione] Photograph, including the copyright thereto."  (Am. Compl. ¶ 9.)  Janik's December 16, 2015 copyright registration for the Guccione Photograph lists the year of completion as 1985.  (Dkt. No. 96: Williams Aff. Ex. C: 12/16/15 Registration at 1.)  On April 19, 2010 and June 26, 2015, some 25 and 30 years later, respectively, Spin published two online articles that "prominently featured" the Guccione Photograph.  (Am. Compl. ¶ 15 & Ex. D.)  Spin did not license the Guccione Photograph from Janik, or otherwise have Janik's permission to publish it in the articles.  (Am. Compl. ¶ 16.)

On "February 16, 2016, Hirsch photographed Brandon Kiehm who was accused of stealing thousands of dollars from a woman he met on Tinder" ("the Kiehm Photograph").  (Id. ¶ 11 & Ex. B.)  "Hirsch is the author of the [Kiehm] Photograph and has at all times been the sole owner of all right, title and interest in and to the [Kiehm] Photograph, including the copyright thereto."  (Am. Compl. ¶ 13; see also id. ¶ 14.)  On February 16, 2016, Hirsch licensed the Kiehm Photograph to the New York Post, which published it in an article the same day.  (Id. ¶ 12 & Ex. C.)  "Hirsch's name was featured in a gutter credit identifying him as the photographer of the [Kiehm] Photograph."  (Am. Compl. ¶ 12.)  On February 18, 2016, Spin published an article that "prominently featured the Kiehm Photograph."  (Id. ¶ 17.)  Spin did not license the Kiehm Photograph from Hirsch, or otherwise have Hirsch's permission to publish it.  (Id. ¶ 18.)

Janik and Hirsch sued Spin for copyright infringement (id. ¶¶ 19-26) and intentionally removing copyright management information in violation of the DMCA (id. ¶¶ 27-33).

**Janik's Case Is Dismissed**

At a discovery conference on May 15, 2017, plaintiffs' counsel stated that Janik was "permanently disabled" and lived in Vermont, and as a result could not physically appear for his

previously scheduled deposition. (Dkt. No. 64: 5/15/17 Conf. Tr. at 13-14.) Plaintiffs' counsel further stated that Hirsch was unavailable for his previously scheduled deposition because he was traveling. (Id. at 14-15.) I responded that plaintiffs chose to sue in the Southern District of New York and must appear for deposition here (id. at 13-14), so-ordered deposition dates for Janik and Hirsch on May 17 and 19, 2017, respectively, and warned that failure to appear could result in a case dispositive sanction (id. at 15).

On May 16, 2017, plaintiffs' counsel wrote the Court seeking "leave to file a dismissal without prejudice pursuant to Fed. R. Civ. P. Rule 41(a)(2)," "[i]n light of the developments at the discovery conference[] held on May 15, 2017." (Dkt. No. 44: 5/16/17 Letter at 1.) Plaintiffs' counsel explained:

> In that conference, the Court ordered Plaintiffs Fran Janik and Steven Hirsch to appear in person for a deposition to be held on May 17 and May 19, 2017, respectively. As Plaintiff's counsel already explained, Plaintiff Janik cannot be present in New York for a deposition on the date in question due to medical reasons. Plaintiff Hirsch has recent and pressing personal commitments that will make him unavailable on the date of the deposition. Plaintiffs take their discovery obligations seriously and would like t[he] opportunity to fulfill their responsibilities before the Court. Therefore, we would like to take the Court's recommendation to dismiss the case.

(Id.) Plaintiffs' counsel reiterated that Janik—"a permanently disabled Plaintiff located in Vermont"—"would like the opportunity to reconsider his chosen forum if he is to be physically present at a deposition and other appearances." (Id. at 2.) Hirsch also desired "the opportunity to refile the case because he cannot be physically present at his deposition." (Id.) Plaintiffs' counsel disingenuously added: "[D]iscovery has just begun. We have exchanged some documents and interrogatories but there have been no depositions and no trial preparation, therefore the Defendant's effort and expense have been minimal." (Id. at 3.)

On May 17, 2017, Spin opposed the motion, arguing that "Plaintiffs did not inform Defense counsel of Janik's purported disability until May 15, 2017 – two days before the scheduled deposition. The deposition was noticed on April 19, 2017," and Janik did not object to the date or location at that time. (Dkt. No. 46: 5/17/17 Letter at 2.) Spin further argued that Hirsch's personal commitments could not excuse his presence at a court-ordered deposition. (Id.)

Spin characterized this lawsuit as an example of plaintiffs' counsel's "[v]exatious [l]itigation [c]ampaign":

> Plaintiffs' lawsuit is part of a mass-litigation campaign orchestrated by their counsel [the Liebowitz Law Firm]. His law firm has filed approximately 250 similar, low value, cases in this district alone. It appears that his litigation strategy is to threaten defendants with the expenses and burdens of discovery and litigation in order to force them to consider unreasonable settlement demands. However, when it comes time for his clients to produce discovery, sit for depositions and truly invest in the case, they would prefer to withdraw their claims while holding onto the ability to re-file them if their settlement demands are not met.

(Id. at 3.) Spin claimed that discovery was "on the edge of completion" and that dispositive motions were "only a few weeks away." (Id.) Spin argued that it would be unjust to permit plaintiffs to dismiss their case without prejudice, as it would deprive Spin of its chance to pursue attorneys' fees as the prevailing party under the Copyright Act and expose it to further lawsuits on the same claims. (Id.) As such, Spin argued, "[a] default judgment under Rule 37 or dismissal with prejudice under Rule 41(b) is a more appropriate way to resolve this case." (5/17/17 Letter at 3.)

On May 23, 2017, I held a conference to deal with plaintiffs' application, and stated my preliminary view that "the choice is a dismissal with prejudice or getting Mr. Janik and Mr. Hirsch in ASAP for their depositions." (Dkt. No. 82: 5/23/17 Conf. Tr. at 2.) As to Hirsch, plaintiffs' counsel stated they were "definitely capable of producing" him for a deposition. (Id. at 6, 9.) However, plaintiffs' counsel indicated that Janik could not appear here for his deposition

under any circumstances due to health issues.  (Id. at 9-10.)  I adhered to my view that Janik could "[d]ismiss or show up for deposition."  (Id. at 10.)  I instructed plaintiffs' counsel: "[Y]ou have until close of business tomorrow to file a notice of dismissal with prejudice, and I will grant that.  And if you do that for Janik and Hirsch shows, then that's the way you want to proceed, I don't have a problem with that."  (Id. at 12.)  Alternatively, I ordered that Janik and Hirsch would be deposed in New York on May 31 and June 1, respectively, in the event they chose to pursue this case.  (Id.)

On May 24, 2017, plaintiffs' counsel filed a letter motion requesting a with-prejudice dismissal of Janik's claims against Spin.  (Dkt. No. 55: 5/24/17 Letter.)  Plaintiffs' counsel stated that they would, "however, produce Plaintiff Hirsch for a deposition on June 1, 2017 as ordered and hence are not dismissing his claim against the Defendant."  (Id.)  I granted Janik's motion that day and dismissed his claims against Spin with prejudice.  (Dkt. No. 56.)  The Clerk of Court entered partial judgment against Janik on May 31, 2017.  (Dkt. No. 57: 5/31/17 Judgment.)

**Hirsch's Case Is Dismissed**

On June 7, 2017, Spin wrote a letter stating that, although plaintiffs were ordered on May 8, 2017 to produce all requested documents by May 12, 2017 (see Dkt. No. 51: 5/8/17 Conf. Tr. at 5), "Hirsch testified [at his June 1, 2017 deposition] that he did not attempt to locate the documents and was not even aware of the Court's order" (Dkt. No. 63: 6/7/17 Letter at 1). According to Spin, "Mr. Hirsch also testified that he intentionally deleted and failed to preserve electronically stored information that was highly relevant to this case."  (Id.)  Hirsch further "testified that even though he had signed his interrogatory responses, he did not fully read them." (Id. at 2 n.3.)  Spin requested a default judgment and monetary sanctions.  (Id. at 1, 3.)

At a conference on June 14, 2017, I stated that Hirsch had been ordered "to comply with the document requests by a fixed date" and that "[h]e clearly did not do that" based on his

deposition testimony. (Dkt. No. 84: 6/14/17 Conf. Tr. at 2.) I further noted that Hirsch "didn't even read the interrogatory answers that he signed," and "[h]e deleted e-mails during the pendency of the litigation or while litigation was anticipated." (Id. at 3-4.) As a sanction, I ordered plaintiff to pay Spin's attorneys' fees related to the Hirsch deposition; when asked for a figure, Spin's counsel responded: "What I had asked for in the letter was not just the cost of the deposition, but also preparing various letters and attending various conferences which I have calculated." (Id. at 11.) Spin's counsel stated that "[t]he total number between May 13 and today dealing with these particular specific issues, which only includes half the time for the deposition, is something over $15,000." (Id.) Plaintiffs' counsel responded that the sanction requested was "very onerous"; I responded: "Dismiss the case if you wish and I won't impose any financial sanctions." (Id. at 12.) Spin's counsel also stated that, in addition to the fees incurred defending against Hirsch's claims, he sought fees for Janik's failure to appear at his deposition. (Id. at 13; see also 6/7/17 Letter at 3 n.6.) I had the following colloquy with counsel:

> MR. WILLIAMS [Spin's counsel]: . . . . I would just say that the number I gave, the $15,000 number was specific to Mr. Hirsch. If you include the deposition and prep time for Mr. Janik, that is another $4,820.00.
> . . . .
>
> THE COURT: Monty Hall, "Let's Make a Deal," [is] $10,000.00, satisfactory to both sides?
> . . . .
>
> MR. WILLIAMS: Yes, your Honor, I will accept the $10,000.00.
>
> THE COURT: Satisfactory?
>
> MS. TSYVKIN [plaintiffs' counsel]: I have no choice.
>
> THE COURT: You have the choice of making him make a motion, at which point it will probably be 15,000 plus the cost of the motion.
>
> MS. TSYVKIN: Can I dismiss the case?

THE COURT: Yes.

(6/14/17 Conf. Tr. at 14-15.)

Plaintiffs' counsel dismissed Hirsch's case with prejudice. (Id. at 15; see also Dkt. No. 69: 6/14/17 Consent Order of Dismissal.) I concluded the conference by stating: "[C]ase dismissed with prejudice. The only remaining costs is your firm [i.e., plaintiffs' counsel] is paying for this transcript." (6/14/17 Conf. Tr. at 15.)

**Spin's Attorneys' Fees Motion**

Following dismissal, Spin moved for attorneys' fees and costs as the prevailing party under the Copyright Act and DMCA. (Dkt. No. 74.) The Court denied fees as to Hirsch in its discretion, noting that "[i]mplicit in today's conf. & decisions was that plaintiffs were avoiding all fees by dismissing with prejudice." (Dkt. No. 78.) Spin renewed its motion for fees as to Janik. (Dkt. No. 94; see also Dkt. No. 95: Spin Br. at 18.) The parties' briefs and exhibits provide useful background information regarding Janik's relationship with Spin, the Guccione Photograph and this lawsuit.

Spin's 30(b)(6) witness described the origin of the Guccione Photograph as he understood it:

> Bob [Guccione] recounted a story where Janik was in his office that was around 1985 or 1984, and Janik at that time was working for Spin. Whether or not he was an [full-time employee] or 1099 contractor I'm unclear on but he was given the title Director of Photography. It's on Google Books, I haven't looked at this anyone could look at the mas[t] head and see if his name is on there. I also looked back into Spin's history that I have. We only went as far back as 2007. So he took this photograph obviously at this point in time there was no digital photography, obviously Bob took the photograph and came back a couple of days later and gave it to him. The photograph that Bob has said you know he has had it I don't know how the photograph became digitized. I can't speak to that. I also don't know if Bob signed a release for this photograph as a subject. So that would also so I don't have a ton of line of sight into it. His interpretation of it, he was given the photograph and was able to use as he saw fit. As an employer of Janik, [full-time employee] or 1099

contractor, Janik was working for Spin and working for Spin with a lot of regularity. I think from there Bob mentioned that he had done an interview for New York Mag in 2005, that's the 20th anniversary of Spin and he seems to think that New York Mag used that photograph then his opinion was more or less that the photograph has been used in a couple of different capacities. What his recount is the photograph was Janik coming in, taking it of him, printing it up and handing it to him that's all I know about it. . . . Aside from the 2010 usage from the photograph and print he also thinks it was used in the section of the magazine called Top Spin back in the 80's. I haven't gone into Goggle Books to see around it's not my place. So you know the photograph, you know has a thirty-two year history, the subject of the photograph and the photographer seem to appear to have different opinions on how the photograph was to be used.

(Dkt. No. 96: Williams Aff. Ex. I: Blackwell Dep. at 118-20.) Of course, virtually all of this is inadmissible hearsay.

Janik claims that he "was friendly with Mr. Guccione Jr. and offered to take some candid photographs of him." (Dkt. No. 100: Janik Aff. ¶ 3.) "Mr. Guccione Jr. and [Janik] agreed that [Janik] would photograph [Guccione] in his office for the purpose of promoting his new music magazine, Spin Magazine." (Id. ¶ 6; see also Williams Aff. Ex. L: Janik Interrogatory Response No. 2.) "At the time of Spin Magazine's founding [Janik] was not an employee of Spin." (Janik Aff. ¶ 5; see also Janik Interrogatory Response No. 1 (Janik "was never an employee of SPIN, but took some photographs at the inception of the magazine for promotional purposes.").) The masthead of Spin Magazine's first issue does not list Janik as an employee (Janik Aff. ¶ 7 & Ex. A) because, Janik argues, he was a freelance photographer at the time (Janik Aff. ¶ 9; Janik Interrogatory Response No. 1).

Janik submitted several other photographs allegedly featured in the first issue of Spin that he republished on his website, which include the photo credit: "Copyright Fran Janik." (Janik Aff. Ex. B.) "All of these images were credited to Fran Janik, as is appropriate for freelance photographers who retain all rights in their respective works." (Janik Aff. ¶ 8.) Janik claims that

"Spin Magazine knew at all times that [he] was a freelance photographer, hence it always properly credited [his] work in the pages of its magazine." (Id. ¶ 9.) "As a freelance photographer, [Janik] retained all [his] rights in the photographs including those [he] privately gave to Mr. Guccione Jr. for a limited purpose of promoting the launch of the magazine." (Id. ¶ 10.) However, although Janik "gave Bob Guccione Jr. the contact sheet with [Janik's] name on it[,] [w]hen the [Guccione] [P]hotograph appeared in SPIN, it had no CMI on it." (Janik Interrogatory Response No. 6.)

## ANALYSIS

### I. LEGAL STANDARDS GOVERNING ATTORNEYS' FEES AWARDS IN COPYRIGHT CASES

The Copyright Act and Digital Millennium Copyright Act each permit an award of attorneys' fees to the prevailing party in the court's discretion. 17 U.S.C. § 505 ("In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . . . [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs."); 17 U.S.C. § 1203(b)(5) ("[T]he court . . . in its discretion may award reasonable attorney's fees to the prevailing party.").[1] The term "prevailing party" includes, in proper circumstances, a prevailing defendant. See, e.g., Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1985 (2016) ("[A] court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be 'encouraged to litigate [meritorious copyright defenses] to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.'"); Cruz v. Am. Broad. Cos., 17 Civ. 8794, 2017 WL 5665657 at *1 (S.D.N.Y. Nov. 17, 2017) ("Section 505 of the Copyright Act permits

---

[1]    See also, e.g., Sheldon v. Plot Commerce, No. 15-CV-5885, 2017 WL 2168654 at *2 (E.D.N.Y. Apr. 18, 2017) ("A fee award is not automatic . . . , but rather 'lies within the sole and rather broad discretion of the [c]ourt.'"), R. & R. adopted, 2017 WL 2168078 (E.D.N.Y. May 16, 2017); Reilly v. Plot Commerce, 15 Civ. 5118, 2016 WL 6837895 at *12 (S.D.N.Y. Oct. 31, 2016).

a prevailing defendant to recover its reasonable attorneys' fees." (fns. omitted)).  Judge Koeltl has

held that because the case was dismissed with prejudice, Spin is a prevailing party under the Federal

Rules of Civil Procedure and the Copyright Act.  Janik v. Spin Media, Inc., 16 Civ. 7308, 2017 WL

6021644 at *3 (S.D.N.Y. Dec. 4, 2017) (Koeltl, D.J.) ("Spin Media is a prevailing party for purposes

of Rule 54(d) of the Federal Rules of Civil Procedure and 17 U.S.C. § 505.").

      Attorneys' fees, however, "are not automatic."  Medforms, Inc. v. Healthcare Mgmt.

Sols., Inc., 290 F.3d 98, 117 (2d Cir. 2002).  "Prevailing plaintiffs and prevailing defendants are to

be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the

court's discretion.  'There is no precise rule or formula for making these determinations,' but instead

equitable discretion should be exercised 'in light of the considerations [the Supreme Court] ha[s]

identified.'"  Fogerty v. Fantasy, Inc., 510 U.S. 517, 534, 114 S. Ct. 1023, 1033 (1994); accord, e.g.,

Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. at 1985 ("The statutory language . . . 'clearly

connotes discretion,' and eschews any 'precise rule or formula' for awarding fees. . . .  [However,]

a district court may not 'award[ ] attorney's fees as a matter of course'; rather, a court must make a

more particularized, case-by-case assessment." (citation omitted)).  Those considerations may

"include 'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal

components of the case) and the need in particular circumstances to advance considerations of

compensation and deterrence.'"  Fogerty v. Fantasy, Inc., 510 U.S. at 535 n.19, 114 S. Ct. at 1033

n.19; accord, e.g., Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. at 1985 (In Fogerty, "we noted

with approval 'several nonexclusive factors' to inform a court's fee-shifting decisions: 'frivolousness,

motivation, objective unreasonableness[,] and the need in particular circumstances to advance

considerations of compensation and deterrence.'"); Janik v. Spin Media, Inc., 2017 WL 6021644 at

*3.  These factors are not exhaustive, and 17 U.S.C. § 505 "grants courts wide latitude to award

attorney's fees based on the totality of circumstances in a case." Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. at 1985.[2]

## II.     SPIN'S ATTORNEYS' FEES MOTION IS DENIED

### A.     Objective Unreasonableness

A lawsuit or litigation position is objectively reasonable if it has "a reasonable basis in law and fact." Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 108 (2d Cir. 2014); accord, e.g., Viva Video, Inc. v. Cabrera, 9 F. App'x 77, 80 (2d Cir. 2001) ("'Objective unreasonableness' is generally used to describe claims that have no legal or factual support."). A plaintiff's failure to prevail on a particular claim does not necessarily render his position unreasonable. See, e.g., Viva

---

[2]     Many decisions in this Circuit have hinged on the objective reasonableness of the losing party's position, seemingly without regard for the other factors enumerated in Fogerty or the "totality of the circumstances" involved. See, e.g., Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. at 1989 ("[H]ardly any decisions in [the Second] Circuit have granted fees when the losing party raised a reasonable argument (and none have denied fees when the losing party failed to do so)."). But "objective reasonableness can be only an important factor in assessing fee applications—not the controlling one," and the Supreme Court has noted that there are "serious questions about how fee-shifting actually operates in the Second Circuit." Id. at 1988-89. The Supreme Court in Kirtsaeng stated:

> To be sure, the [Second Circuit] Court of Appeals' framing of the inquiry resembles our own: It calls for a district court to give "substantial weight" to the reasonableness of a losing party's litigating positions while also considering other relevant circumstances. But the Court of Appeals' language at times suggests that a finding of reasonableness raises a presumption against granting fees, and that goes too far in cabining how a district court must structure its analysis and what it may conclude from its review of relevant factors. Still more, district courts in the Second Circuit appear to have overly learned the Court of Appeals' lesson, turning "substantial" into more nearly "dispositive" weight.

Id. at 1989 (citations omitted). Thus, "[a]lthough objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." Id.; see also id. at 1986 (The Copyright Act "strik[es] a balance between two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that work. Accordingly, fee awards under § 505 should encourage the types of lawsuits that promote those purposes." (citation omitted)).

Video, Inc. v. Cabrera, 9 F. App'x at 80 (Plaintiff's "inability to substantiate any of its allegations

certainly could have led the District Court to award fees; but that inability does not as a matter of

law require an award of fees, given the court's finding that [plaintiff's] action had some support at

the time it was initiated.").[3/]  On the other hand, "if a claim 'is clearly without merit on any

determinative issue, then it is objectively unreasonable.'"  TCA Television Corp. v. McCollum, 15

Civ. 4325, 2017 WL 2418751 at *10 (S.D.N.Y. June 5, 2017); see also, e.g., Schleifer v. Berns, No.

17-CV-1649, 2017 WL 3084406 at *6 (E.D.N.Y. July 19, 2017) (awarding fees where "[n]o

reasonable copyright attorney, or even an attorney who had devoted 20 minutes to legal research,

would have filed this complaint"); Konangataa v. Am. Broad. Cos., 16 Civ. 7382, 2017 WL 2684067

at *2 (S.D.N.Y. June 21, 2017) (awarding fees where "no reasonable lawyer with any familiarity

with the law of copyright could have thought that" defendants' use of plaintiff's material was

infringing).

      Spin argues that Janik's claims for copyright infringement and removal of copyright

management information under the DMCA were objectively unreasonable.  (Dkt. No. 95: Spin Br.

at 4, 10-14.)  According to Spin, "Janik would have lost his copyright infringement claim on the

merits because SPIN was either a co-owner of the copyright to the Photo or a licensee of the Photo."

(Id. at 4.)  Spin also argues that Janik "alleged that he was entitled to seek statutory damages and

attorneys' fees under 17 U.S.C. § 505 even though his copyright registration clearly post-dates the

---

[3/]    See also, e.g., Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc., 14 Civ. 9270, 2017 WL 3393850 at *2 (S.D.N.Y. Aug. 4, 2017) ("That a court ultimately disagreed with a plaintiff's position in the underlying litigation is not enough: 'the question "is not whether there was a sufficient basis for judgment in favor of defendants, but whether the factual and legal support for plaintiff's position was so lacking as to render its claim . . . objectively unreasonable."'"); John Wiley & Sons, Inc. v. Kirtsaeng, 08 Civ. 7834, 2016 WL 7392210 at *2 (S.D.N.Y. Dec. 21, 2016) (Plaintiff's "position, though ultimately unsuccessful, was not objectively unreasonable.").

commencement of the alleged infringement, rendering these claims frivolous under 17 U.S.C. § 412," and that "Janik never identified any copyright management information that SPIN could have supposedly removed." (Spin Br. at 2.)

### 1.     The Copyright Infringement Claim

"A claim of direct copyright infringement requires proof that (1) the plaintiff had a valid copyright in the work, and (2) the defendant infringed the copyright by violating one of the exclusive rights that 17 U.S.C. § 106 bestows upon the copyright holder." Smith v. Barnesandnoble.com, LLC, 839 F.3d 163, 166 (2d Cir. 2016); see also 17 U.S.C. § 106(1), (5). (copyright owner has the "exclusive rights" "to reproduce the copyrighted work in copies" and "to display the copyrighted work publicly").

### a.     Janik's Copyright: Who Authored The Guccione Photograph?

Janik obtained a copyright registration for the Guccione Photograph (see page 2 above), and Spin raises no serious challenge to its validity (see generally Dkt. No. 95: Spin Br.; Dkt. No. 103: Spin Opp. Br.). Rather, Spin argues that Spin and/or Bob Guccione "should have qualified as a co-owner [of the Guccione Photograph] given the participation of Mr. Guccione in the creation of the Photo (including sticking out his tongue at the camera)," and thus should have been named on the Photograph's copyright registration as the co-author of a "joint work." (Spin Br. at 11; see also Spin Opp. Br. at 12 n.11.)

"A 'joint work' is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. "The authors of a joint work are coowners of copyright in the work." 17 U.S.C. § 201(a); see also, e.g., Thomson v. Larson, 147 F.3d 195, 199 (2d Cir. 1998) ("Joint authorship entitles the co-authors to equal undivided interests in the whole work—in other words, each joint author has the

right to use or to license the work as he or she wishes, subject only to the obligation to account to the other joint owner for any profits that are made."). "A joint owner of a copyright and his licensees cannot be liable to a co-owner for copyright infringement because a copyright owner cannot infringe his own copyright. The immunity of a joint owner from suit extends to the situation where one co-owner makes unauthorized use of the contribution of the other." Strauss v. Hearst Corp., 85 Civ. 10017, 1988 WL 18932 at *5 (S.D.N.Y. Feb. 19, 1988) (citations omitted); accord, e.g., 16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 255 (2d Cir. 2015) ("'[O]ne joint owner cannot be liable for copyright infringement to another joint owner.'"). "A co-authorship claimant in our Circuit generally must show that 'each of the putative co-authors (1) made independently copyrightable contributions to the work; and (2) fully intended to be co-authors.'" 16 Casa Duse, LLC v. Merkin, 791 F.3d at 255.

The phrase "independently copyrightable" originated in Childress v. Taylor, 945 F.2d 500, 509 (2d Cir. 1991), and the Second Circuit has since clarified that the phrase is not to be read literally. See 16 Casa Duse, LLC v. Merkin, 791 F.3d at 256 n.3 ("It seems likely that '[b]y "copyrightable" [the Childress court] meant only to say that the coauthor's contribution must be the product of authorship, i.e., expression. [The court] did not mean that in order to be a coauthor one must be able to obtain a copyright on his or her separate contribution,' or even that such would be possible." (quoting 2 PATRY ON COPYRIGHT § 5:15)).[4/] "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure, the requisite

---

[4/] See also, e.g., 2 PATRY ON COPYRIGHT § 5:15 (2017) ("The proper approach is to find joint authorship whenever each party contributes an amount of expression that meets the constitutional requirement of originality, a requirement that may be met by cumulative examples of inseparable contributions or by interdependent contributions.").

level of creativity is extremely low; even a slight amount will suffice." <u>Feist Publ'ns, Inc.</u> v. <u>Rural Tel. Serv. Co.</u>, 499 U.S. 340, 345, 111 S. Ct. 1282, 1287 (1991) (citation omitted).

 As for the second element, "a specific finding of mutual intent [is] necessary." <u>Thomson</u> v. <u>Larson</u>, 147 F.3d at 202. "Though joint authorship does not require an understanding by the co-authors of the legal consequences of their relationship, obviously some distinguishing characteristic of the relationship must be understood in order for it to be the subject of their intent." <u>Childress</u> v. <u>Taylor</u>, 945 F.2d at 508. The intent standard is not "strictly subjective," meaning it "does not turn solely on the parties' own words or professed state of mind." <u>Thomson</u> v. <u>Larson</u>, 147 F.3d at 201. "Rather, the <u>Childress</u> court suggested a more nuanced inquiry into factual indicia of ownership and authorship, such as how a collaborator regarded herself in relation to the work in terms of billing and credit, decisionmaking, and the right to enter into contracts." <u>Id.</u> And, while "[i]ntent 'at the time the [work] is done' remains the 'touchstone,' . . . subsequent conduct is normally probative of a prior state of mind." <u>Childress</u> v. <u>Taylor</u>, 945 F.2d at 509. In all cases, "[c]are must be taken to ensure that true collaborators in the creative process are accorded the perquisites of co-authorship and to guard against the risk that a sole author is denied exclusive authorship status simply because another person rendered some form of assistance." <u>Id.</u> at 504.

 It is doubtful that Guccione's pose constituted an "independently copyrightable" contribution to the Photograph.[5] Moreover, there is no evidence that he and Janik "fully intended

---

[5]  "In the context of a photo shoot, '[m]ere selection of the subject matter to be photographed,'" in this case Guccione himself, "'does not create joint authorship.'" <u>Foster</u> v. <u>Lee</u>, 93 F. Supp. 3d 223, 228 (S.D.N.Y. 2015); <u>see</u> page 8 above ("Mr. Guccione Jr. and [Janik] agreed that [Janik] would photograph [Guccione] in his office for the purpose of promoting his new music magazine, Spin Magazine."). The only conceivable "contribution" Guccione made to the Photograph was to stick out his tongue. <u>See</u>, <u>e.g.</u>, <u>Olan Mills, Inc.</u> v. <u>Eckerd Drug of Texas, Inc.</u>, No. CA3-88-0333, 1989 WL 90605 at *1 (N.D. Tex. Apr. 20, 1989) ("The
(continued...)

to be co-authors." See, e.g., Thomson v. Larson, 147 F.3d at 202 ("Childress makes clear that the contribution even of significant language to a work does not automatically suffice to confer co-author status on the contributor. Under Childress, a specific finding of mutual intent remains necessary."); Vaad L'Hafotzas Sichos, Inc. v. Krinsky, 133 F. Supp. 3d 527, 535 (E.D.N.Y. 2015) ("Childress thus confirms that even a separately copyrightable contribution to a work does not automatically make the contributor an author of the work."), appeal withdrawn (Feb. 19, 2016).

Janik claims that he "was friendly with Mr. Guccione Jr. and offered to take some candid photographs of him." (See page 8 above.) The two agreed that Janik would photograph Guccione "in his office for the purpose of promoting his new music magazine, Spin Magazine." (Id.) Janik claims that he "retained all [his] rights in the photographs including those [he] privately gave to Mr. Guccione Jr. for a limited purpose of promoting the launch of the magazine." (See page 9 above.) Spin allegedly knew that Janik was a freelance photographer and "hence it always properly credited [his] work in the pages of its magazine," and Janik claims that (presumably to be credited), he "gave Bob Guccione Jr. the contact sheet with [Janik's] name on it" with the Photograph. (Id.)

On this limited and one-sided record (neither Spin nor Guccione submitted an affidavit), the Court finds that there is, at a minimum, a genuine factual dispute as to the parties' intent surrounding the origin, creation and ownership of the Guccione Photograph. There is no evidence, for example, that Guccione had "decisionmaking authority over what changes [we]re made and what [was] included in [the] work," or that he was to be credited in every publication of the

_____

5/     (...continued)
       simple fact that an individual brings his own image to the studio is not enough to give that person a protectable property right in the portrait.").

Photograph along with Janik. Thomson v. Larson, 147 F.3d at 202-03. Indeed, in an email, Guccione never claims any ownership of the Photograph, and states that he "obviously . . . wasn't posing for a shoot" at the time it was taken. (Dkt. No. 96: Williams Aff. Ex. D: 12/7 Guccione Email.) Janik presents both his subjective belief that he is the Guccione Photograph's sole author, along with objective evidence that Spin had "always properly credited" his work and that this case was to be no exception. (See page 9 above.) On this record, the Court cannot find that Janik's copyright claim was objectively unreasonable as a matter of law.

### b. The License: Did Spin Infringe?

Janik argues that he granted Bob Guccione an informal, oral license to use the Guccione Photograph "for a limited purpose of promoting the launch of [Spin] magazine," and that Spin exceeded the scope of the license by publishing the Guccione Photograph 25 and 30 years later. (See page 9 above.) See, e.g., Graham v. James, 144 F.3d 229, 235 (2d Cir. 1998) ("Under federal law, 'nonexclusive licenses may . . . be granted orally, or may even be implied from conduct.'"). In the alternative to its joint authorship argument, Spin agrees that it had a license to use the Guccione Photograph, but disagrees as to the license's scope. (Dkt. No. 95: Spin Br. at 11 ("[B]ecause Janik admits he delivered the Photo to SPIN for use for 'promotional purposes,' SPIN at the very least had a license to use the Photo."); id. at 1 ("Janik gave a copy [of the Guccione Photograph] to Mr. Guccione without placing any restrictions on how the Photo was to be used by SPIN.").)

"Where . . . the existence of the license is undisputed, and the only contested issue is its scope, the copyright owner bears the burden of proving that the defendant's conduct was unauthorized under the license." Smith v. Barnesandnoble.com, LLC, 839 F.3d 163, 167 (2d Cir. 2016). "A valid license . . . immunizes the licensee from a charge of copyright infringement, provided that the licensee uses the copyright as agreed with the licensor." Davis v. Blige, 505 F.3d

90, 100 (2d Cir. 2007), <u>cert. denied</u>, 555 U.S. 822, 129 S. Ct. 117 (2008); <u>see also</u>, <u>e.g.</u>, <u>Graham</u> v. <u>James</u>, 144 F.3d at 236 ("A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement."). "[T]he fact that a party has licensed certain rights to its copyright to another party does not prohibit the licensor from bringing an infringement action where it believes the license is exceeded or the agreement breached." <u>Tasini</u> v. <u>N.Y. Times Co.</u>, 206 F.3d 161, 170 (2d Cir. 2000), <u>aff'd</u>, 533 U.S. 483, 121 S. Ct. 2381 (2001).[6/]

As with the "joint work" argument, material factual disputes prevent the Court from concluding that Janik granted Spin an unlimited and perpetual license to use the Guccione Photograph. Janik claims that he permitted Spin to use the Photograph for the limited purpose of promoting the <u>launch</u> of Spin Magazine. (<u>See</u> pages 8-9 above.) Absent any compelling evidence from Spin to the contrary, Janik's claim that Spin exceeded the scope of the license by publishing the Guccione Photograph 25 and 30 years later is not unreasonable. (<u>See</u> Dkt. No. 104: Janik Opp. Br. at 7 ("There was no implied license of the photograph beyond the limited promotional use incident to the founding of the magazine. It is improbable that Janik gave an implied license to use his print . . . 25 and 30 years later, without any payment or consideration."); <u>see also</u>, <u>e.g.</u>, <u>Fischer</u> v. <u>Forrest</u>, 14 Civ. 1304, 2015 WL 195822 at *7 (S.D.N.Y. Jan. 13, 2015) ("'[I]t is black-letter law

---

[6/]    "There are two general categories of licenses: non-exclusive licenses, which permit licensees to use the copyrighted material and may be granted to multiple licensees; and exclusive licenses, which grant to the licensee the exclusive right—superior even to copyright owners' rights—to use the copyrighted material in a manner as specified by the license agreement." <u>Davis</u> v. <u>Blige</u>, 505 F.3d at 99. "[E]xclusive license agreements must be in writing." <u>Id.</u> at 100 n.10; <u>see also</u> 17 U.S.C. § 204(a). The Court presumes that any license here is non-exclusive since neither party argues that it was ever reduced to writing.

that a claim for copyright infringement lies when a party's use of copyrighted material exceeds the scope of its license.'").

### c.      Statutory Damages

Subject to certain exceptions not here applicable,

no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for–

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412. "Courts in this district have held that Section 412 of the Copyright Act imposes a bright-line rule that precludes recovery of statutory damages and attorneys' fees where the first act of infringement in a series of ongoing infringements occurred prior to the work's copyright registration, finding such a bright-line rule preferable to case-by-case analyses of whether a series of infringements 'has stopped sufficiently such that the restart constitutes a new set of infringements.'" Solid Oak Sketches, LLC v. 2K Games, Inc., 16 Civ. 724, 2016 WL 4126543 at *2 (S.D.N.Y. Aug. 2, 2016).[7] Thus, "[e]ven '[w]here the alleged infringement begins before registration and continues after registration, statutory damages and attorney fees are still

---

[7]      See also, e.g., Troll Co. v. Uneeda Doll Co., 483 F.3d 150, 158 (2d Cir. 2007); Grecco v. Associated Press, 16 Civ. 6240, 2017 WL 2913501 at *4 (S.D.N.Y. July 7, 2017) ("Although the Second Circuit has not ruled on this issue, district courts in this Circuit agree that pursuant to this bright-line rule, if there is a series of infringements (as there is alleged to be in this case), recovery of statutory damages and attorneys' fees is precluded when the infringement claim is against a defendant that began its infringement before registration."); Fioranelli v. CBS Broad. Inc., 15 Civ. 952, 2017 WL 1400119 at *8-9 (S.D.N.Y. Jan. 19, 2017); Pearson Educ., Inc. v. Ishayev, 11 Civ. 5052, 2014 WL 2153911 at *1 (S.D.N.Y. May 22, 2014) ("A copyright owner is entitled to recover statutory damages, so long as its copyright was registered before the work was infringed.").

unavailable.'" <u>Solid Oak Sketches, LLC</u> v. <u>2K Games, Inc.</u>, 2016 WL 4126543 at *2; <u>accord</u>, <u>e.g.</u>,

<u>Peterson</u> v. <u>Kolodin</u>, 13 Civ. 793, 2013 WL 5226114 at *8 (S.D.N.Y. Sept. 10, 2013).

      Spin argues that "Janik's request for statutory damages and attorneys' fees on his

infringement claim was . . . clearly lacking <u>any</u> factual or legal basis and was therefore frivolous,"

because both instances of Spin's alleged infringement occurred prior to Janik's December 16, 2015

copyright registration for the Guccione Photograph. (Dkt. No. 95: Spin Br. at 13; <u>see</u> page 2 above.)

The Amended Complaint's Wherefore provisions are not a model of clarity (<u>see</u> Dkt. No. 26: Am.

Compl. Wherefore ¶ 3), which plaintiffs' counsel attributes to a drafting error. (Dkt. No. 104: Janik

Opp. Br. at 3 ("It might be true that the Amended Complaint (FAC) does not clearly delineate

between the damages Janik and co-Plaintiff Steven Hirsch are eligible for, respectively. Instead,

FAC lumps in Janik and Hirsch and requests relief in the alternative. The lack of clarity in

delineation between Janik and Hirsch, does not make Janik's claims upon which this relief is based

without basis in law or fact. Request for relief should have treated the Plaintiffs separately, but

failing to do so does not make it frivolous or objectively unreasonable." (record citation omitted)).

      Plaintiffs' counsel's representation finds support in the record. Plaintiffs' counsel did

not elect statutory damages until after Janik's case was dismissed and thus, if Janik's case had

proceeded, he conceivably would have sought actual damages. (Dkt. No. 84: 6/14/17 Conf. Tr. at

10-11.)[8] Indeed, at the May 23, 2017 conference the day before Janik's case was dismissed, Janik's

counsel stated that she had retained an expert on actual damages on Janik's behalf. (Dkt. No. 82:

5/23/17 Conf. Tr. at 17-19.) And when plaintiffs initially sued the wrong Spin entity and moved for

---

[8]    "[A]n infringer of copyright is liable for either" actual or statutory damages, 17 U.S.C. §
504(a), and "the copyright owner may elect, at any time before final judgment is rendered,
to recover, instead of actual damages and profits, an award of statutory damages for all
infringements involved in the action," 17 U.S.C. § 504(c)(1).

default judgment, Hirsch sought statutory damages but Janik only sought actual damages under the Copyright Act. (See Dkt. No. 12: Pl. Br. at 3-4.) While this does not excuse any imprecision in the Amended Complaint, it supports the argument that Janik did not intentionally advance (or pursue) a baseless damages theory.

The Court accordingly declines to find that Janik's damages theory was objectively unreasonable.

### 2.     The DMCA Claim

The Digital Millennium Copyright Act ("DMCA"), Pub. L. No. 105-304, 112 Stat 2860 (1998), "was enacted in 1998 to implement the World Intellectual Property Organization Copyright Treaty, and to update domestic copyright law for the digital age." Viacom Int'l, Inc. v. YouTube, Inc., 676 F.3d 19, 26 (2d Cir. 2012) (citations omitted). The DMCA protects, among other things, the "[i]ntegrity of copyright management information" ("CMI"), and prohibits the removal of CMI from copyrighted works. See generally 17 U.S.C. § 1202. "The purpose of CMI is to facilitate licensing of copyright for use on the Internet and to discourage piracy." S. REP. 105-190 at 92 n.18 (1998). The DMCA provides:

No person shall, without the authority of the copyright owner or the law–

(1) intentionally remove or alter any copyright management information,

(2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

(3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b).  The term "copyright management information" is defined as:

> any of the following information conveyed in connection with copies . . . of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:
>
> (1) The title and other information identifying the work, including the information set forth on a notice of copyright.
>
> (2) The name of, and other identifying information about, the author of a work.
>
> (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
>
> . . . .
>
> (6) Terms and conditions for use of the work.
>
> (7) Identifying numbers or symbols referring to such information or links to such information.
>
> (8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.

17 U.S.C. § 1202(c).  As to the phrase "conveyed in connection with" used in § 1202(c), "[t]he term 'conveyed' is used in its broadest sense and is not meant to require any type of transfer, physical or otherwise, of the information.  It merely requires that the information be accessible in conjunction with, or appear with, the work being accessed."  S. REP. 105-190 at 35 (1998).

"To establish a violation under subsection 1202(b), a plaintiff must show '(1) the existence of CMI on the [infringed work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally.'"  Gattoni v. Tibi, LLC, 16 Civ. 7527, 2017 WL 2313882 at *4 (S.D.N.Y. May 25, 2017).[9]  Alternatively, a plaintiff can show that the

---

[9]    Accord, e.g., Reilly v. Commerce, 15 Civ. 5118, 2016 WL 6837895 at *6 (S.D.N.Y. Oct. 31, (continued...)

defendant "distribute[d] . . . copies of works . . . knowing that copyright management information has been removed or altered without authority of the copyright owner . . . knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement . . . ." 17 U.S.C. § 1202(b)(3); see, e.g., Friedman v. Live Nation Merch., Inc., 833 F.3d 1180, 1187 (9th Cir. 2016) ("The statute does prohibit the intentional removal of CMI. But [plaintiff] could also prevail upon a showing that [defendant] distributed his works with the knowledge that CMI had been removed, even if [defendant] did not remove it.").

Spin argues that Janik's DMCA claim was objectively unreasonable because "Janik had no factual basis—let alone a sufficient basis—for alleging that copyright management information was removed from the Photo under 17 U.S.C. § 1202. There was never any such information on the Photo in the first place." (Dkt. No. 95: Spin Br. at 12; see also id. at 2 ("Janik never identified any copyright management information that SPIN could have supposedly removed.").) Janik responds that he "had his attribution credit on all of his photographs, including the one given to Mr. Guiccione Jr." (Dkt. No. 99: Janik Br. at 10.) Janik also attached to his affidavit other photographs that allegedly appeared in the first issue of Spin Magazine; "[a]ll of these images were credited to Fran Janik." (See page 8 above.) However, Janik did not produce a copy of the Guccione Photograph bearing any CMI, including his name. (See Dkt. No. 103: Spin Opp. Br. at 12 n.9 ("Neither party located any issue of SPIN magazine where the [Guccione] photograph was attributed to Mr. Janik or any copy of the photograph containing any copyright management information.").)

---

<sup>9/</sup>       (...continued)
2016); Sheldon v. Plot Commerce, 15 Civ. 5885, 2016 WL 5107072 at *13 (E.D.N.Y. Aug. 26, 2016), R. & R. adopted, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016); BanxCorp v. Costco Wholesale Corp., 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010).

These arguments divert attention from an important statement in Janik's interrogatory responses that neither party mentions. When asked to "[s]tate all facts that support the allegation that copyright management information was removed from the Guccione Photograph," Janik responded that he "gave Bob Guccione Jr. the contact sheet with [Janik's] name on it[,]" but "[w]hen the [Guccione] [P]hotograph appeared in SPIN, it had no CMI on it." (Dkt. No. 96: Williams Aff. Ex. L: Janik Interrogatory Response No. 6 (emphasis added).) The term "contact sheet" is a term of art in professional photography—a relic from the days of pre-digital film photography when the Guccione Photograph was taken in 1985. See, e.g., Sean O'Hagan, Contact sheets: where the magic and chaos of photographs comes alive, THE GUARDIAN, https://www.theguardian.com/artanddesign/2015/sep/02/contact-sheets-magnum-photography-magic-chaos. A "contact sheet" is defined as: "A piece of photographic paper on to which several or all of the negatives on a film have been contact-printed." "Contact Sheet" Definition, OXFORD DICTIONARIES, https://en.oxforddictionaries.com/definition/contact_sheet.[10/]

Janik's name on the contact sheet was "conveyed in connection with [the] cop[y]" of the Guccione Photograph and qualifies as CMI under the DMCA. 17 U.S.C. § 1202(c)(2) (CMI includes "[t]he name of, and other identifying information about, the author of a work."); see also, e.g., Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC, 999 F. Supp. 2d 1098, 1102-03 (N.D. Ill. 2014) ("[I]t is 'implausible' that a viewer of the record album would not understand that the credit line 'Photography: Don Levey, Don Levey Studio' on the back of the album also referred to authorship of the photo on the cover of the album."); Agence France Presse v. Morel, 769 F. Supp.

---

[10/]    See also, e.g., "Contact Sheet" Definition, DICTIONARY.COM, http://www.dictionary.com/browse/contact-sheet?s=t ("[A] contact print, usually of all frames of a developed roll of negative print film, used as a proof print.").

2d 295, 305 (S.D.N.Y. 2011) ("This Court rejects the movants' argument that CMI must be removed from the photograph itself to state a claim for removal or alteration of CMI. First, § 1202(b) imposes no such requirement. Moreover, the DMCA defines CMI as information 'conveyed <u>in connection with</u> copies' of a work—it does [not] require the CMI to appear on the work itself. It is implausible that a viewer of [plaintiff] Morel's photos would not understand the designations 'Morel' and 'by photomorel' appearing next to the images to refer to authorship." (citation omitted)); S. REP. 105-190 at 35 (1998) ("The term 'conveyed' is used in its broadest sense and is not meant to require any type of transfer, physical or otherwise, of the information. It merely requires that the information be accessible in conjunction with, or appear with, the work being accessed."). Whether the same contact sheet was used 25 and 30 years later to digitize the Guccione Photograph for Spin's anniversary editions, however, is unknown. (<u>See</u> Williams Aff. Ex. I: Blackwell Dep. at 119 ("I don't know how the photograph became digitized. I can't speak to that.").)[11] In any event, as Spin only argues that the Photograph contained no CMI, that argument does not establish that Janik's DMCA claim was objectively unreasonable as a matter of law.[12]

**B.    Frivolousness**

Frivolousness, like objective unreasonableness, requires a court to determine whether the claim at issue "'lack[ed] an arguable basis either in law or in fact.'" <u>Creazioni Artistiche Musicali, S.r.l.</u> v. <u>Carlin Am., Inc.</u>, 14 Civ. 9270, 2017 WL 3393850 at *4 (S.D.N.Y. Aug. 4, 2017);

---

[11]    If it was, it might be reasonable to infer that a Spin employee "intentionally remove[d]" Janik's name when reproducing and republishing the Photograph. 17 U.S.C. § 1202(b)(1).

[12]    Even if this claim were unreasonable, aside from a handful of Spin's counsel's billing entries, it does not appear that Spin spent any time separately litigating Janik's DMCA claim, apart from his Copyright Act claim. (<u>See generally</u> Williams Aff. Ex. A: Spin Billing Entries.) Thus, any fees would be de minimis.

accord, e.g., John Wiley & Sons, Inc. v. Kirtsaeng, 08 Civ. 7834, 2016 WL 7392210 at *2 (S.D.N.Y. Dec. 21, 2016). "This factor clearly overlaps significantly with the consideration of objective unreasonableness, although the Second Circuit has indicated that the two factors are 'not necessarily coextensive.'" Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc., 2017 WL 3393850 at *4; accord, e.g., Agence France Presse v. Morel, 10 Civ. 2730, 2015 WL 13021413 at *5 (S.D.N.Y. Mar. 23, 2015), aff'd, 645 F. App'x 86 (2d Cir. 2016).

Implicit in the conclusion that Janik's claims were not objectively unreasonable was the finding that his claims were not devoid of legal or factual support. The Court accordingly concludes, for many of the reasons discussed above, that Janik's claims were not frivolous. See, e.g., Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc., 2017 WL 3393850 at *4 ("[R]egardless of the exact boundaries of these two factors [i.e., objective unreasonableness and frivolousness], the Court has little trouble concluding, for the reasons discussed, that Plaintiff's claim was not frivolous."); John Wiley & Sons, Inc. v. Kirtsaeng, 2016 WL 7392210 at *2 ("For the same reasons that [plaintiff's] litigating position was objectively reasonable, it was not frivolous.").

**C.    Motivation**

"[A] party is improperly motivated where it asserts claims 'not because of [their] inherent merit,' but rather because it seeks to 'knowingly gamble[ ] on an unreasonable legal theory in order to achieve a secondary gain,'" such as "'the leveraging of a settlement.'" Agence France Presse v. Morel, 10 Civ. 2730, 2015 WL 13021413 at *5 (S.D.N.Y. Mar. 23, 2015), aff'd, 645 F. App'x 86 (2d Cir. 2016); see also, e.g., Konangataa v. Am. Broad. Cos., 16 Civ. 7382, 2017 WL 2684067 at *2 (S.D.N.Y. June 21, 2017) ("There may well be justification for defendants' implication that these were strike suits, designed to extort settlements from defendants on the basis that the defense costs would exceed what plaintiff would accept in settlement."); Baker v. Urban

Outfitters, Inc., 431 F. Supp. 2d 351, 358 (S.D.N.Y. 2006) ("[R]ather than pursuing resolution of a fairly minor dispute in good faith, the record suggests that [plaintiff] (and his counsel) filed and maintained this suit in an attempt to extract a significant payment from perceived 'deep pocketed' defendants (and in an attempt to garner publicity for [plaintiff's] agent and for his lawyer)."), aff'd, 249 F. App'x 845 (2d Cir. 2007). But "where a court 'has no reason to doubt that, throughout the litigation, [a party] sincerely believed that [her work] was entitled to copyright protection and pursued [her] claim for the purpose of vindicating [her] rights,' that fact 'weighs against awarding costs and attorneys' fees against [her].'" Effie Film, LLC v. Pomerance, 11 Civ. 7087, 2013 WL 1759560 at *4 (S.D.N.Y. Apr. 24, 2013); see also, e.g., John Wiley & Sons, Inc. v. Kirtsaeng, 08 Civ. 7834, 2016 WL 7392210 at *3 (S.D.N.Y. Dec. 21, 2016) (Plaintiff's "decision to file and its pursuit of the copyright infringement action against one whom it believed in good faith to have infringed its copyright did not constitute either bad faith or suggest an impermissible motive.").

Spin argues that "Janik's conduct in this case, including his unwillingness to participate in discovery and his last-minute, suspect excuses for non-compliance with Court orders, made clear that Janik and his attorney – who has brought hundreds of similar cases in this District since January of 2016 – were motivated by the hope for a quick, easy and unjustified settlement." (Dkt. No. 95: Spin Br. at 4 (fn. omitted)). Spin argues that Janik's decision to voluntarily dismiss his case rather than appear for deposition "indicates that he never intended to prosecute this case." (Id. at 14.) According to Spin, "[o]nce he realized [Spin] had no intention of paying him a large settlement related to meritless claims, Janik tried to obtain a dismissal without prejudice so that he could continue to threaten [Spin] with claims without the supervision of the Court." (Id. at 15.)

The Court cannot conclude that Janik was improperly motivated. As the numerous conference transcripts and letters to the Court make clear, Janik dismissed his case because he felt

that his medical issues precluded his travel to New York for deposition. (<u>See</u> pages 2-5 above; <u>see also</u> Dkt. No. 100: Janik Aff. ¶¶ 12-25.) When the Court refused to allow Janik to testify remotely, Janik dismissed his case. (<u>See</u> pages 2-5 above; <u>see also</u> Janik Aff. ¶¶ 17, 19 ("Once my attorneys informed me that a remote deposition would not be possible, I fully informed them of the various reasons, medical and otherwise that I could not travel to New York for a deposition. . . . After discussing the various options of personally attending a deposition in New York, my attorneys and I decided to dismiss the case."). To be sure, Spin is correct that discovery in this case was a train wreck; but there is scant evidence that Janik shirked his discovery obligations because Spin refused to pay a strike suit settlement.[13/] Moreover, while each side criticizes the other side's settlement

---

[13/] Spin cites an article indicating that plaintiffs' counsel, the Liebowitz Law Firm, are litigious to say the least. (Spin Br. at 4 n.7; <u>see also</u> <u>id.</u> at 15 ("Janik's strategy is part-and-parcel of a mass litigation campaign by Janik's counsel on behalf of dozens of photographers in hundreds of cases, almost all of which involve actual damages, if any, below a court filing fee.").) Spin likens this conduct (<u>see</u> Spin Br. at 4-5) to that of "[a] copyright troll [who] 'plays a numbers game in which it targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim.'" <u>Creazioni Artistiche Musicali, S.r.l.</u> v. <u>Carlin Am., Inc.</u>, 14 Civ. 9270, 2017 WL 3393850 at *4 (S.D.N.Y. Aug. 4, 2017). However, without specifics regarding the respective merits of these cases, filing volume does not necessarily signal an improper motivation in this case by counsel, let alone by Janik.

The two cases from this District that Spin cites involving the Liebowitz Law Firm—<u>Konangataa</u> v. <u>Am. Broad. Cos.</u>, 16 Civ. 7382, 2017 WL 2684067 (S.D.N.Y. June 21, 2017), and <u>Janik</u> v. <u>MediaPost Commc'ns, Inc.</u>, 16 Civ. 5872, 2017 WL 2735578 (S.D.N.Y. June 26, 2017)—do not alter the Court's conclusion. In <u>Konangataa</u>, Judge Kaplan granted defendants' attorneys' fees motion as the "prevailing party" under the Copyright Act, primarily because "no reasonable lawyer with any familiarity with the law of copyright could have thought that" defendants had committed a copyright violation. <u>Konangataa</u> v. <u>Am. Broad. Cos.</u>, 2017 WL 2684067 at *2. Although Judge Kaplan stated that "[t]here may well be justification for defendants' implication that these were strike suits," he made no specific finding on that point and indeed "assume[d] <u>arguendo</u> that plaintiff's motives were blameless." <u>Id.</u> In <u>MediaPost</u>, a lawsuit by Janik against MediaPost's use of the Guccione Photograph, Judge Carter denied Janik's motion for default judgment but made no findings as to Janik's or his counsel's proper or improper motivation.

(continued...)

position (see Spin Br. at 15; Dkt. No. 99: Janik Br. at 2-3), the record on this fee application is devoid of any details as to those settlement proposals.

Spin has not shown that this lawsuit was improperly motivated.

### D. Compensation and Deterrence

"This factor is meant to ensure that defendants are encouraged to protect their legitimate rights and bad-faith plaintiffs are discouraged from bringing frivolous and unreasonable claims." Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc., 14 Civ. 9270, 2017 WL 3393850 at *5 (S.D.N.Y. Aug. 4, 2017); see also, e.g., Schleifer v. Berns, 17 Civ. 1649, 2017 WL 3084406 at *6 (E.D.N.Y. July 19, 2017) ("As to deterrence, an award of costs and fees is crucial here, so as to deter this plaintiff, and other similarly situated plaintiffs, from bringing frivolous and objectively unreasonable claims. There is also a need to deter attorneys who fail to comply with their obligations to the Court to research and put forth good-faith claims and defenses.").

Considerations of compensation and deterrence do not weigh in favor of a fee award here. The Court has concluded that none of the other Fogerty factors weighs in favor of awarding

---

13/     (...continued)
See Janik v. MediaPost Commc'ns, Inc., 2017 WL 2735578 at *1-3. Instead, Judge Carter found that Janik had not timely registered his copyright (precluding his infringement claim) and that Janik did not plausibly allege the existence of CMI on the Guccione Photograph (precluding his DMCA claim). Id. While Spin argues that "[w]hen Judge Carter gave Janik an opportunity to renew his default judgment motion after amending his complaint, Janik dropped the Section 1202 claim from the complaint entirely, conceding that no management information was removed from the Photo," it is just as likely that Janik dropped that claim as duplicative on a default judgment because his amended Copyright Act claim provided substantially similar relief. (Spin Br. at 13; see also Janik v. MediaPost Commc'ns, Inc., 16 Civ. 5872 (S.D.N.Y.): Dkt. No. 13: Am. Compl.) Even assuming Janik's claims in MediaPost were meritless, that has little bearing here in light of the Court's independent analysis above indicating that Janik's claims against Spin in this case, at least on this record (limited but greater than in MediaPost), were not objectively unreasonable and appear to have been presented in good faith.

fees, and it appears that Janik brought this lawsuit with the good faith belief that his copyright rights had been violated.  See, e.g., Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc., 2017 WL 3393850 at *5 ("[A]s already noted, Plaintiff's conduct in this litigation was not objectively unreasonable, frivolous, or driven by an improper motive, and thus does not warrant the deterrent effect of fees.").  Although attorneys should be deterred from flouting their discovery obligations, both Janik's and Hirsch's claims were voluntarily dismissed with prejudice prior to any motion practice.  That result was precipitated by the Court repeatedly sanctioning plaintiffs and their counsel, which itself provided sufficient compensation to Spin and (hopefully) will encourage plaintiffs' counsel, the Liebowitz Law Firm, to take discovery more seriously in future cases.  (See Dkt. No. 104: Janik Opp. Br. at 10 ("The Court might note that Janik should be deterred from filing cases in forums where he cannot appear physically or only belatedly disclosing those facts to the Court and adversary.  Those are legitimate concerns, however, for which Janik has already paid in Rule 37 sanctions and deposition bust fees.").)

### E.  **Other Considerations**

The Fogerty factors are not exclusive, and the Court is required to account for the "totality of circumstances in a case" in determining whether a fee award is warranted.  Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1985 (2016).  The procedural history of this case indicates that a fee award is inappropriate.  In particular, Janik's and Hirsch's claims were voluntarily dismissed (with prejudice) not because they were meritless, but because of a series of discovery lapses, caused more by the Liebowitz Law Firm than by Janik (or Hirsch).

Janik claimed that his disability prevented him from traveling to New York for deposition.  (See pages 2-5 above.)  I informed plaintiffs' counsel that Janik had two choices: appear for deposition or dismiss the case; Janik properly dismissed his case with prejudice after determining

that in his view his physical appearance was impossible. (Id.) Nothing in the transcripts or letters filed prior to Janik's dismissal suggests that he dismissed his case for any other reason. While plaintiffs' counsel should have disclosed Janik's purported disability much earlier, their failure to do so was not, in my opinion as the presiding judge throughout the many pretrial proceedings in this case, in bad faith or sanction worthy.

Moreover, my understanding, shared by plaintiffs' counsel, was that Hirsch's case would be dismissed in lieu of either plaintiff being subjected to any further monetary liability. (See Dkt. No. 102: Tsyvkin Aff. ¶¶ 10-14.) At the June 14, 2017 conference at which Hirsch's case was ultimately dismissed, Spin's counsel indicated that Spin would seek not just fees related to Hirsch's deposition, but fees related to Janik's deposition and other related matters as well. (See pages 5-7 above.) After discussing the attorneys' fees figure that Spin's counsel sought (a figure considerably less than Spin seeks here), plaintiffs' counsel wisely chose to dismiss Hirsch's case. (See pages 6-7 above; see also Tsyvkin Aff. ¶¶ 12-13 ("Plaintiff's counsel dismissed the case with prejudice only because she was facing attorney's fees and costs in relation to the Hirsch and Janik claims. . . . Had it been made clear by Defendant's counsel that he still intended to seek attorney's fees and costs as to the Janik matter, Plaintiff might not have dismissed the case with prejudice at that point.").) Indeed, I ended the conference by stating that "[t]he only remaining cost" to be borne by the plaintiffs was the cost of the conference transcript. (See page 7 above.)

Nevertheless, the Court notes that plaintiffs' counsel, the Liebowitz Law Firm, has filed a large number of copyright cases in this District—at least "452 cases in this Court in the last 21 months" Cruz v. Am. Broad. Cos., 17 Civ. 8794, 2017 WL 5665657 at *2 n.11 (S.D.N.Y. Nov. 17, 2017)—a few of which were dismissed from the bench as frivolous, and fees awarded. See Cruz v. Am. Broad. Cos., 2017 WL 5665657 at *2 n.11 (Judge Kaplan noted that he "awarded over

$121,000 in attorneys fees against a client of Mr. Liebowitz in three other, related copyright infringement cases that were dismissed from the bench." (citing <u>Kanongataa</u> v. <u>Am. Broad. Cos.</u>, 16 Civ. 7382, 2017 WL 4776981 at *3 (S.D.N.Y. Oct. 4, 2017)); <u>see also</u> <u>Konangataa</u> v. <u>Am. Broad. Cos.</u>, 16 Civ. 7382, 2017 WL 2684067 at *1-2 (S.D.N.Y. June 21, 2017). Indeed, in <u>Cruz</u>, Judge Kaplan on his own motion required the Liebowitz Law Firm to show cause why plaintiff should not be required to post security for costs including attorneys' fees. <u>Cruz</u> v. <u>Am. Broad. Cos.</u>, 2017 WL 5665657 at *1-2.[14]

In the present case, the Liebowitz Law Firm made a total hash of discovery, requiring multiple court conferences. (<u>See</u> pages 2-7 above.) At a minimum, there was a failure of counsel to adequately communicate and coordinate with the plaintiffs, let alone with opposing counsel and the Court. (<u>See</u>, <u>e.g.</u>, Dkt. No. 84: 6/14/17 Conf. Tr. at 2-5; Dkt. No. 82: 5/23/17 Conf. Tr. at 3-4; Dkt. No. 64: 5/15/17 Conf. Tr. at 13-14.) While no further sanctions are being granted in this case, the Liebowitz Law Firm needs to consider its reputation with the Court and, frankly, clean up its act.

Despite these concerns, the Court in the exercise of its discretion finds that the totality of the circumstances, including all of the <u>Fogerty</u> factors, militate in favor of denying fees in this case.

---

[14] Interestingly, within two weeks of the order to show cause, Liebowitz informed the Court that the parties had settled the case. (17 Civ. 8794, Dkt. No. 8.)

## **CONCLUSION**

For the reasons set forth above, Spin's attorneys' fees motion (Dkt. No. 94) is

DENIED.

SO ORDERED.

Dated:          New York, New York
               January 10, 2018

_____
**Andrew J. Peck**
United States Magistrate Judge


Copies ECF to:          All Counsel
                        Judge Koeltl